HARDISON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 120. Argued October 31, 1973.—Decided November 27, 1973.*
(Also reported in 212 N. W. 2d 103.)

For the plaintiff in error there was a brief and oral argument by *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *Charles R. Larsen,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J.    At approximately 10:30 a. m., on December 3, 1971, two young black males and a white female entered the Salt and Pepper Lounge in Milwaukee. They were later identified as the defendant, M. C. Jones and Sherry Henderson. There is no dispute as to their identity. While the three of them were in the tavern, a robbery took place and the bartender, Andrew Nelson, was severely beaten about the head and face. He died a few days later as a result of the head injuries he received. The cause of death is not challenged.

All three parties were initially charged with first-degree murder and robbery. Subsequently, Henderson was granted complete immunity and at the trial she was one of the principal witnesses for the state.

Henderson testified the three of them were the only customers in the tavern and they sat together at the bar and ordered drinks. After a short while Jones called the bartender, Nelson, to the end of the bar. She was putting money in the jukebox when she heard the man cry out and turned to see that Jones had his arm around Nelson's neck and was pressing him to the floor. At the same time, the defendant was opening the cash

register and taking the money out of it. She heard Nelson crying and screaming and telling Jones that he should not do this. She saw Jones stomping hard on Nelson's head with his foot. She also testified as follows:

"Then Odell [the defendant] had—by then Odell had the money out of the cash register and was walking by M. C. and the man, where the man was at, and Odell stopped by the man for a minute and he lifted up his leg as if to kick the man, I don't know if he did or not but he lifted his leg as if he was going to, and I heard the man moan again, and they walked on out."

Henderson further testified that the three of them left together and went to the defendant's apartment where the defendant and Jones counted approximately $70 which they had taken in the robbery and started drinking a bottle of scotch which they had also stolen.

Later that day, Nelson was discovered by a customer who had come into the tavern. The police were summoned and they determined that Nelson was still alive and rushed him to the hospital. Dr. Robert Steiner testified that it was extremely unlikely that Nelson would live when he arrived at the hospital. He had a severe head injury, and was unconscious. Dr. Roland Brown, assistant medical examiner of Milwaukee county, testified that the cause of death was an extensive injury to the head and brain, with a skull fracture which occurred from multiple blows.

Defendant has raised the following issues in this appeal:

1. Whether there was sufficient evidence to establish that the defendant was guilty beyond a reasonable doubt of the crimes charged?

2. Whether the state was required to elect the specific provision of sec. 939.05, Stats. (party to a crime), under which it sought a conviction?

3. Whether the trial court erred in refusing to grant a mistrial after improper testimony had been given?

*Sufficient evidence.*

Defendant argues that, "[t]here is not a scintilla of evidence in the record that defendant, himself, 'used force against the person of the owner.'" There is no dispute about the fact that the defendant was at the scene of the crime and did, in fact, take the money from the register. However, it is argued that only Jones used force against Nelson.

Sec. 943.32 (1), Stats., provides in pertinent part:

". . . (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; . . ."

There is nothing in the record to indicate there was any verbal communication between Jones and the defendant at the time Jones began to knock Nelson to the floor and stomp on his head. Simultaneously with the action of Jones, the defendant began emptying the cash register. They acted swiftly and obviously in pursuit of a common plan.

Sec. 939.05, Stats., provides:

"**Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a)  Directly commits the crime; or
"(b)  Intentionally aids and abets the commission of it; or
"(c)  Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. . . ."

Defendant argues that, ". . . there were two incidents involved and the only evidence was that the theft from the cash register occurred at about the same time that M. C. Jones was fatally attacking the bartender." As we view the record, we are of the opinion that there was only *one incident* and *two separate crimes* resulted therefrom. The testimony of Henderson affords sufficient credible evidence for the jury to reasonably conclude that the defendant, himself, stomped or kicked Nelson in the head. While she did not actually see him stomp on his head, she testified that he had lifted his leg as if to kick him and then she heard him (Nelson) groan.

Sec. 940.02, Stats., provides as follows:

". . . Whoever causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not less than 5 nor more than 25 years."

The state did not initially charge under sec. 939.05, Stats. However, in discussing the instructions which were to be given the jury, the assistant district attorney made it clear to the judge and defendant's counsel that the state believed it had established sufficient proof under either the aiding and abetting or the complicity provisions of sec. 939.05.

In *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 77, 78, 187 N. W. 2d 823, this court stated:

"Within the general definition of a party to an offense is a person who is concerned in its commission in some affirmative manner. Aiding in the commission of an

offense may include the performance of some act which forms a part of the offense. . . ."

The act of emptying the cash register alone was sufficient to make the defendant a party to the crime of robbery and indicate his tacit approval of the beating that Jones was administering to Nelson. Also, there was credible evidence that the defendant, himself, stomped on Nelson and contributed to the cause of his death, thereby making him guilty of second-degree murder.

Counsel for the defendant at oral argument asserted that there was insufficient proof that the defendant was guilty of second-degree murder as party to a crime under the conspiracy theory.

James A. Bradley, one of the first police officers to arrive on the scene, found the victim lying face down in a pool of blood. He testified at trial that he could tell by his dress that the victim was a male but he had been stomped so badly that the officer could not recognize any features on the face. By turning the victim's head he could hear heavy breathing and thereby determined that he was still alive. There is evidence that the defendant helped administer the beating to the victim *after* he had been stomped by Jones. It is also important that the victim probably could have identified the defendant if he had lived. Murrel Hart, co-owner of the establishment, testified that Nelson worked alone at the bar Monday through Friday, 10 a. m. to 3 p. m. Hart testified that he knew the defendant by his nickname "Tiny Tim" and had seen him in the tavern. In fact, there was a picture of the defendant behind the bar. Nelson was the only person who could identify the defendant except for Jones and Henderson.

At the conclusion of the state's case, and outside the presence of the jury, the defendant moved for a dismis-

sal of both counts. In denying the motion, the trial court observed:

"... I haven't the slightest question in my mind that the totality of the evidence in its complete context would sustain a verdict by the jury of murder in the first degree."

The trial court further observed it had no difficulty in applying sec. 939.05, Stats. (party to a crime) to the actions of the defendant, and that in its opinion both the theory of conspiracy and an aider and abettor were applicable to the actions of the defendant, "... [e]verything here worked with lightning speed and precision."

We agree with these observations of the trial court. The defendant chose to present no evidence. The verdicts submitted to the jury included one for second-degree murder. Verdicts were returned finding the defendant guilty of second-degree murder and robbery.

Our attention is directed to *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471, and *State v. Bachmeyer* (1945), 247 Wis. 294, 19 N. W. 2d 261, wherein the respective defendants were convicted of first-degree murder under the conspiracy theory although they had not actually committed the killings. Defendant would distinguish *Pollack, supra* and, *Bachmeyer, supra,* from the instant case on the basis that in those cases "... the jury reasonably concluded that the killing was intentional." We are unable to follow this rationale. In the instant case, the defendant was charged with first-degree murder. He was fully aware of the charges made against him. Second-degree murder is first-degree murder without the intent to kill, *Brook v. State* (1963), 21 Wis. 2d 32, 123 N. W. 2d 535. Second-degree murder is a lesser-included offense to the crime of first-degree murder.

There was sufficient credible evidence to support the verdict of the jury finding that the defendant was guilty of these offenses beyond a reasonable doubt.

*Electing the provision under sec. 939.05, Stats.*

At the conclusion of the trial, the state took the position that the evidence adduced would support a conviction under either or both the conspiracy or aiding and abetting provisions of sec. 939.05, Stats. The trial court concluded that such was a reasonable probability and gave the jury instructions on both. It is the position of the defendant that the state was required to elect to proceed under either the conspiracy or the aiding and abetting provision.

In *Hawpetoss v. State, supra,* page 78, this court considered aiding and abetting provisions of the statute, and stated:

"The elements of complicity, or aiding and abetting are that a person (1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance. . . ."

Henderson testified that the defendant, ". . . lifted up his leg as if to kick the man, I don't know if he did or not but he lifted his leg as if he was going to, and I heard the man moan again, . . ." Although the witness did not actually observe the defendant kick the victim, the action which she did observe was followed by his "moan." Significantly, this incident occurred after the victim had already been severely beaten. This is sufficient credible evidence on which the jury could conclude that the defendant was an aider and abettor.

At oral argument and inferentially in his brief, counsel for the defendant argues that the state was required to

initially charge sec. 939.05, Stats., in the information. In a long line of cases this court has held that while the practice of referring to sec. 939.05, when the prosecutor recognizes that the evidence will support a conviction only as party to the crime charged, is commendable, it is not mandatory. In the absence of circumstances indicating a detrimental effect on the defendant, the failure to charge under sec. 939.05 is harmless error. *State v. McClanahan* (1972), 54 Wis. 2d 751, 754, 196 N. W. 2d 700; *Nicholas v. State* (1971), 49 Wis. 2d 683, 692, 693, 183 N. W. 2d 11; *Bethards v. State* (1970), 45 Wis. 2d 606, 618, 173 N. W. 2d 634; *La Vigne v. State* (1966), 32 Wis. 2d 190, 193, 145 N. W. 2d 175.

In *Bethards v. State, supra,* page 618, the court stated the reasons for not requiring the citation of sec. 939.05, Stats., in the information:

"The state has well observed that the recommendation of *La Vigne* should not be made a mandatory requirement because (1) it is often difficult to tell in advance of filing the information whether to charge the defendant as the principal or under this section as a party to the crime; (2) the statute itself does not require that a defendant in a position such as the instant defendant, be specifically charged with violation of this section; and finally, (3) that even if it was error for the information not to contain reference to sec. 939.05, Stats., it was harmless error for the defendant could not have been prejudiced by a failure to narrow this complaint down to this specific statutory reference.

"In all likelihood, the district attorney knew of the facts surrounding this incident prior to the filing of the information so presumably it was known that defendant could be charged under the party-to-a-crime action. This should have been done. However, failure to do so, in the absence of other circumstances showing a detrimental effect on the defendant, would appear to be harmless error. The defendant knew what he was charged with and there is nothing in the record to indicate that had this statute been specifically referred to in the information, his trial strategy would have been any dif-

ferent. The state's burden of proof is still the same in either event."

These observations apply equally as well to the suggestion that a particular subsection of 939.05 be identified in the charge. In a recent case, *State v. Cydzik* (1973), 60 Wis. 2d 683, 687, 211 N. W. 2d 421, this court stated:

". . . Defendant claims error in the failure of the information to set forth the specific subsection of the party-to-a-crime statute relied upon. The statute does not require that a defendant be specifically charged with violation of the section, stating instead, 'Whoever is concerned in the commission of a crime is a principal.' This court has held that it is not mandatory to refer to the party-to-a-crime section, giving as one reason the fact that 'it is often difficult to tell in advance of filing the information whether to charge the defendant as the principal or under this section as a party to the crime.' This reason applies to reference to a subsection at least as much and as well as it does to reference to the section. Where reference to the party-to-a-crime section is not mandatory, we see no reason to hold referring to a particular subsection to be required. . . ."

### Mistrial.

The defendant further argues that a prejudicial statement was made by Sherry Henderson at trial, and the trial judge's curative instruction to the jury to disregard that statement was an insufficient remedy. It is urged that defendant's motion for a mistrial should have been granted.

The assistant district attorney questioned Henderson as follows:

"*Q.* Can you state whether or not Odell Hardison said anything while he was in the vehicle driving to his house?

"*A.* They were just laughing about the robbery they had pulled and the ones that they had done before."

When an objection was raised by defense counsel, the assistant district attorney, himself, moved that the last portion of the answer be stricken. The trial judge said:

". . . 'And the ones that they had done before,' motion granted, stricken, immaterial and the jury is instructed most vehemently to disregard that portion of the answer completely."

The jury instructions also included an admonition to disregard the stricken testimony.

A conference was held out of the presence of the jury and defense counsel moved for a mistrial. The assistant district attorney explained that while he knew that the defendant had made this statement in the presence of Henderson regarding prior robberies, he had explicitly told her not to mention it. The fact that the defendant was laughing after this vicious attack was indicative of his depraved mind and, therefore, it was proper to elicit such testimony.

In *Harris v. State* (1971), 52 Wis. 2d 703, 191 N. W. 2d 198, the defendant was on trial for burglary and this court considered the alleged prejudicial nature of some testimony by a detective called by the prosecution.

". . . 'They [Harris and one Norman Pozorski] were in the apartment and about five minutes later another known convicted safecracker appeared on the scene and also entered the apartment Number 16.' The objection to the remark was sustained by the trial court and the jury was admonished to disregard the detective's statement. At the conclusion of the testimony, the court denied Harris' motion for a mistrial and after verdict denied his motion for a new trial." *Harris v. State, supra,* page 704.

This testimony improperly inferred that the defendant was another known convicted safecracker. In considering the issue, we stated:

"Generally, whether remarks of witnesses or an attorney have such a prejudicial effect that a new trial should be granted is a question of fact. It has been held that the erroneous admission of a confession in evidence in violation of a constitutional right is as a matter of law

not error harmless beyond a reasonable doubt and requires a new trial. *Pulaski v. State* (1964), 24 Wis. 2d 450, 129 N. W. 2d 204; *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, rehearing denied, 386 U. S. 987, 87 Sup. Ct. 1283, 18 L. Ed. 2d 241. We think the remark of Cherney is of such a nature it does not go directly to the issue of guilt as a confession by the accused does and therefore should be considered in the context of the other facts of the case by the court in determining whether in fact the remark was harmless beyond a reasonable doubt.

"In such determinations, the curative effect of the court's admonition to the jury to disregard the evidence may be considered. *Blackwell v. State* (1969), 42 Wis. 2d 615, 167 N. W. 2d 587. Here, the remark was stricken as not responsive as to the question and the jury was admonished to disregard it. If this were all of the surrounding circumstances, it probably would not be sufficient. But, the evidence in support of the guilt is so strong and convincing that it renders any potential harmfulness of the remark nugatory." *Harris v. State, supra,* pages 705, 706.

*See also: Gelhaar v. State* (1973), 58 Wis. 2d 547, 562, 207 N. W. 2d 88; and *Buckner v. State* (1972), 56 Wis. 2d 539, 544, 202 N. W. 2d 406.

In *Buckner v. State, supra,* page 544, this court held as follows:

"Defendant also alleges prejudicial error was committed when one of defendant's accomplices stated during trial that defendant was attempting another robbery just prior to the arrest. Counsel for defendant immediately objected to the statement; the trial court sustained the objection on the ground that it was not responsive to the question. The court then directed the jury to disregard the statement. This instruction was sufficient to cure any prejudicial effect of the statement." (Citing *Harris v. State*.)

This particular testimony of Henderson does not go directly to the issue of guilt of this particular robbery as in the case of a confession but merely indicates a pattern of conduct. There was sufficient undisputed

evidence upon which the jury could have convicted the defendant had this remark never been made. Bernadine Nelson, the victim's wife, testified that she saw two black men in the tavern with a white blond girl (Henderson) when she stopped in at approximately 11:30 a. m. to give her husband a message. Cecelia Bedell testified, as did Mrs. Nelson, that she saw the two black men leave the tavern with the blond girl. This corroborated the undisputed testimony of Henderson that Jones and the defendant had committed these crimes in her presence. Moreover, defense counsel stipulated to the fact that a fingerprint found at the scene on a shot glass was the defendant's.

The trial court properly denied the motion for a mistrial.

*By the Court.*—Judgment and order affirmed.