STATE, Respondent, v. CHARBARNEAU, Appellant.

*No. 76–016–CR.  Submitted on briefs March 8, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N.W.2d 227.)

For the appellant the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Wm. L. Gansner,* assistant attorney general.

HEFFERNAN, J. The action was commenced by the filing of a criminal complaint on December 29, 1975, charging the defendant with burglary, contrary to sec. 943.10, Stats., and theft, contrary to sec. 943.20. An

information was filed on January 13, 1976, charging the defendant with these crimes. The defendant was arraigned on January 19, 1976, and pleaded not guilty to both charges. Jury trial was waived.

The prosecutor became aware, before trial, that he would only be able to make out a case against this defendant on a party-to-a-crime theory, under sec. 939.05, Stats. As a result, on February 20, 1976, he filed an amended information, charging the defendant with the same two substantive counts, but specifying the reliance on sec. 939.05 as to each count. Trial was held to the court on February 24, 1976. Before the commencement of the trial, defense counsel objected to proceeding on the amended information without a new arraignment. As a result, the prosecutor withdrew the amended information, and trial proceeded on the original information.

At the conclusion of the trial, the trial judge found the defendant guilty of both counts. Four year sentences were imposed on each count, the sentences to run concurrently. Judgment of conviction was entered on March 1, 1976. Appeal is from this judgment.

Two issues are involved in this appeal: First, did the prosecutor, by withdrawing the amended information at the beginning of the trial, thereby waive reliance on the party-to-a-crime theory? Second, if this theory was not waived, was the evidence adduced at trial sufficient to sustain the convictions?

No contention is made in this case that the evidence was sufficient to convict the defendant on any other theory than party-to-a-crime. If the prosecutor waived his reliance on that theory, the convictions must be reversed.

Sec. 939.05, Stats., provides for prosecution, as a principal, of anyone "concerned in the commission of a crime," whether that person directly committed the crime, aided and abetted in its commission, or conspired

to commit it. The purpose of the statute was to abolish the common-law distinction between principals and accessories. *State v. Shears,* 68 Wis.2d 217, 239, 229 N.W. 2d 103 (1975). The statute makes one person vicariously liable for a substantive offense committed by another. *State v. Nutley,* 24 Wis.2d 527, 554, 129 N.W.2d 155 (1964), *cert. denied,* 380 U.S. 918 (1965).

This court has repeatedly commended the practice of referring to sec. 939.05, Stats., by number, in the information when the prosecutor knows that the proof is such that a conviction can only be based on a party-to-a-crime theory. *La Vigne v. State,* 32 Wis.2d 190, 195, 145 N.W. 2d 175 (1966) ; *Bethards v. State,* 45 Wis.2d 606, 617, 173 N.W.2d 634 (1970) ; *Hardison v. State,* 61 Wis.2d 262, 271, 212 N.W.2d 103 (1973). This practice is not, however, mandatory. *Bethards, supra; Hardison, supra.* The statute by its terms authorizes charging the defendant as a principal. *La Vigne, supra; Harrison v. State,* 78 Wis. 2d 189, 208, 254 N.W.2d 220 (1977). In the absence of a detrimental effect on the defendant, the failure to specifically refer to sec. 939.05 in the information is harmless error. *Bethards, supra,* at 618; *Hardison, supra,* at 271.

The present record does not support a claim of detrimental effect on the defendant. The criminal complaint in this case, which was quite lengthy, spelled out the crimes alleged, by reference to facts which lead to conviction only on a party-to-a-crime theory. These facts are the same facts which were adduced at trial.

Moreover, before trial, the prosecutor filed an amended information, specifying reliance on sec. 939.05, Stats. This amended information was withdrawn when the defendant's attorney objected to proceeding without a new arraignment. There could be no reasonable claim, however, that the defendant was not put on notice of the theory of the prosecutor. Defendant's claim to the con-

trary is unfounded in light of the following discussion at the time the amended complaint was withdrawn:

"MR. MONTABON [Prosecutor] : That Amended Information was filed for the purpose of making very clear to the defendant that the acts—that the evidence in this case would show that he was guilty of this crime by being a party to the crime but not directly committing it. I believe that the Supreme Court cases say that it is a better practice for the prosecution, when they are aware that this is what their case is based on, that the defendant be informed of this, although it is not mandatory that this be done. . . .

". . . .

"COURT: May I inquire of the District Attorney, do you want—Are you asking leave to withdraw the Amended Information and to proceed on the original Information?

"MR. MONTABON: I think according to case law, we can very well proceed on the original Information—yes.

"COURT: Is that your request then?

"MR. MONTABON: Yes, Your Honor.

"COURT: You are asking leave to withdraw the Amended Information?

"MR. MONTABON: Correct. If he is objecting to that Information, I do not want that to interfere with these proceedings.

"COURT: Any objection to that request as made?

"MR. NIENOW [Defense Counsel] : No.

". . . .

"COURT: I do believe that able counsel for the defendant is acquainted with the laws that pertain to a charge— law pertaining to charges of this kind in that I do understand the law to be that our Supreme Court has stated there is no real necessity to allege in the criminal charges —in any criminal charge to make reference in that criminal charge under Section 939.05 as he has done in this instance.

"MR. NIENOW: I recognize that, but he said he was going to make it more specific, et cetera, and so on. It is my point he hasn't done that, referring to 939.05. It doesn't mean anything.

"COURT: And the particular case that I made note of was 61 Wis. 262—

"MR. NIENOW: I recognize those cases."

This colloquy belies any claim that the withdrawal of the amended information led the defendant to believe that the prosecutor would attempt to prove that the defendant directly committed the crimes charged. No detrimental effect to the defendant is shown on this record as a result of the failure to refer to sec. 939.05, Stats., in the original information.

Similarly, the discussion quoted above indicates clearly that, in withdrawing the amended information, the prosecutor had no intention of waiving reliance on the party-to-a-crime theory, nor could the defendant reasonably have believed that he did. The "waiver" theory advanced by the defendant is without support in the record.

The convictions were amply supported by the evidence. The test on review of the sufficiency of the evidence in a criminal case has been capsulated as follows:

"Several rules applied in appellate review of the sufficiency of the evidence in criminal cases have been stated so frequently in our late cases that they need no citation of authority to support them. The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be

drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules." *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971).

*Accord, Taylor v. State,* 55 Wis.2d 168, 176–77, 197 N.W.2d 805 (1972); *Whitmore v. State,* 56 Wis.2d 706, 713, 203 N.W.2d 56 (1973).

The convictions in this case can only be sustained on a party-to-a-crime theory, under sec. 939.05, Stats. There are two different party-to-a-crime theories embodied in the statute. Sec. 939.05(2)(b) relates to guilt as an aider and abettor, while sec. 939.05(2)(c) relates to guilt as a conspirator.

There are several different ways in which liability as an aider and abettor has been described. In *State v. Nutley, supra,* 24 Wis.2d at 554–55, the liability was described as follows:

"Under the complicity theory of sec. 939.05(2)(b), a person is liable for the substantive crime committed by another if (1) he undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further if (2) he consciously desires, or 'intends' that his conduct will yield such assistance."

To like effect, *see, Hawpetoss v. State,* 52 Wis.2d 71, 187 N.W.2d 823 (1971). Wis. J.I.—Criminal, Part I, 400(A) provides:

"A person intentionally aids and abets the commission of a crime when, acting with knowledge or belief that another person is committing or intends to commit a crime, he knowingly either

"(a) renders aid to the person who commits the crime, or

"(b) is ready and willing to render aid, if needed, and the person who commits the crime knows of his willingness to aid him."

While this latter test may, at first blush, appear to be broader than the *Nutley* test, they can be reconciled to the extent that one known to be ready and willing to render aid is considered to be aiding the person who commits the crime as a matter of objective fact. Indeed, this is a reasonable assumption, since the fact that an accomplice is ready and willing to render aid tends to further the criminal objective, by providing support. For example, an accomplice whose sole purpose is as a lookout might never be called upon to actually warn the person committing the crime, if the crime goes as planned. The role as a lookout would nevertheless aid in the execution of the crime as a matter of objective fact.

"[W]here one person knew the other was committing a criminal act, he should be considered a party thereto when he acted in furtherance of the other's conduct, was aware of the fact that a crime was being committed, and acquiesced or participated in its perpetration." *Roehl v. State*, 77 Wis.2d 398, 407, 253 N.W.2d 210 (1977).

*State v. Nutley* also detailed party-to-a-crime liability under the conspiracy theory:

"Under the conspiracy theory of sec. 939.05(2)(c), Stats., a person may be vicariously liable for the substantive crime of another under either of two circumstances.

"(1) The parties may enter into an agreement to commit a particular crime. The fact of agreement imposes liability for the substantive offense on all conspirators when the crime is consummated by a single perpetrator.

"(2) During the course of executing the crime on which there is agreement, one person commits another crime which is, objectively, the natural and probable consequence of the agreed-upon crime. Under these circumstances, the fact of agreement renders all parties liable for the incidental crime." 24 Wis.2d at 535–36.

It is pointed out in *State v. Haugen*, 52 Wis.2d 791, 797, 191 N.W.2d 12 (1971), however, that a conspirator

under this theory must be one who is concerned with a crime prior to its actual commission.

When analyzed in light of the above standards, the evidence in this case supports the convictions on either the aider-and-abettor theory or the conspiracy theory. The statement given to the police by Edward Charbarneau, the defendant's brother, indicates that he, Susan Ernst, Pat Graham, and the defendant were travelling in a car driven by Susan. They needed gas, but none of them had any money. They stopped at B & D Motors, the scene of the crime, and Ed and Pat got out. Ed kicked in the door of B & D Motors, and some gas and $8–10 in change was taken. Ed and Pat returned to the car, and they drove away. Susan then stopped the car, so that the gas could be put in the tank, and the defendant asked how much money they got. Ed told the defendant about the change and gave him some of it. The defendant asked what was inside the B & D building, and Pat told him that there were chain saws. The defendant said he would like to have a couple of chain saws. At this point, they returned to B & D Motors, and Ed and Pat got out, re-entered the building, and made several trips back and forth, carrying chain saws and an outboard motor out to the car.

At trial, Edward Charbarneau retracted all parts of his statement which related to the defendant's participation. He claimed instead that the defendant was half passed out in the front seat, that the defendant said nothing, that he gave no change to the defendant, and that the defendant did not ask about the contents of the building. The conflict between these two accounts was, however, a matter of credibility, to be determined by the trial judge. He could have chosen to believe either version.

Susan Ernst testified that the defendant was in the back seat of the car before the first entry into B & D

Motors, but that he later changed his position in the car. She stated that Ed gave some of the change to the defendant and testified that the defendant, in turn, gave her some of the coins. She also testified that she thought that the defendant was awake when Ed and Pat were discussing the merchandise inside the B & D building.

The defendant's version of the incident is that he was too drunk to know what was going on. He testified that he drank a quart of brandy early in the day, followed by a number of bottles of beer at various locations. He also testified that he participated in the smoking of five or six marijuana cigarettes, and that he took two Placidyl pills. He said that he and the other participants went to the Corner Tap, where he claimed that he drank at least four pitchers of beer by himself and two water glasses full of straight whiskey. Although he testified that he remembered being at the Corner Tap, he claimed to remember none of the later events of the evening.

At trial, the defendant's version of his drunken state was corroborated by several of the other occupants of the car. It was, however, seriously contradicted by other testimony. Officer Dabbert, the arresting officer, stated that he read the defendant his Miranda rights after the defendant asked him why he had not been read his constitutional rights. This would indicate an awareness of what was happening.

Officer Dabbert also testified that, although it appeared that the defendant had been drinking, he was not intoxicated. He noticed nothing out of the ordinary about the way the defendant walked. Deputy Sheriff Korbas, who was with the defendant for about one-half hour during the booking process, testified that he did not think that the defendant was intoxicated. Deputy Korbas also testified that the defendant was able to walk and carry on coherent conversation, without a slurring of speech. He stated that he did not smell anything on the defendant's breath.

Moreover, the defendant's credibility was impeached at trial. The defendant testified that he did not know about his brother's statement to the police in regard to his conduct at the scene until he was in court. A letter was introduced, however, written by the defendant to Susan Ernst while both were in jail, in which he referred to his brother's statement.

We conclude the evidence adduced at trial was sufficient to sustain the convictions on either the aiding-and-abetting theory or the conspiracy theory.

Intent may be inferred from conduct. *State v. Cydzik*, 60 Wis.2d 683, 697, 211 N.W.2d 421 (1973). A reasonable inference of criminal intent can be raised from the defendant's statement that he would like to have a couple of chain saws. The evidence in this case was circumstantial, but circumstantial evidence may be sufficient to support a conviction.

"Since the proof of guilt in the instant action was entirely circumstantial, such evidence when taken together must be sufficient to convince a reasonable jury to a proper degree of certitude of the defendant's guilt.
" 'The evidence does not have to remove every possibility before a conviction can be sustained. *See State v. Eberhardt* (1968), 40 Wis.2d 175, 161 N.W.2d 287. The test stated in *State v. Johnson* (1960), 11 Wis.2d 130, 136, 104 N.W.2d 379, is "that all the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main fact sought to be proved and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no other person committed the offense charged." The circumstantial evidence must, however, be sufficiently strong to exclude every reasonable theory of innocence, that is, the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility.' *State v. Shaw* [58 Wis.2d 25, 29, 205 N.W.2d 132]."

*State ex rel. Hussong v. Froelich,* 62 Wis.2d 577, 586, 215 N.W.2d 390 (1974).

While the trier of facts may not indulge in inferences wholly unsupported by any evidence (*State ex rel. Kanieski v. Gagnon,* 54 Wis.2d 108, 117, 194 N.W.2d 808 (1972)), the evidence in this case establishes a verbal act aiding in the commission of the crime (the statement about wanting chain saws), as well as a sharing in the proceeds of the crime (the coins given him by his brother Ed), and a conscious desire to yield assistance (by referring to the chain saws). Similarly, a conviction on the conspiracy theory is supportable, by inferring from the defendant's statement about the chain saws an agreement to participate in the crime.

Mere presence and ambivalent conduct at the scene of a crime is insufficient to support a conviction. *State v. Haugen, supra,* 52 Wis.2d at 796; *United States v. Williams,* 341 U.S. 58, 64 n. 4 (1951). Unlike *Haugen,* however, here the evidence is sufficient to raise an inference that the defendant knew that a crime had been committed. The statement made by Edward Charbarneau, in which he claimed that the defendant asked, "how much money I got," tends to establish that the defendant was aware of the criminal activity. In addition, there was evidence that the defendant received some of the stolen coins.

Unlike the fact situation in *People v. Owens,* 32 Ill. App.3d 893, 337 N.E.2d 60 (1975), cited by the defendant, here there was evidence which went beyond establishing that the defendant was merely present at the scene of the crime but sat staring straight ahead, unmoving. In the instant case, evidence which the trier of facts had a right to believe established that the defendant was engaged in interested cooperation, stimulation, and instigation. He had a "stake in the venture."

*Direct Sales Co. v. United States,* 319 U.S. 703, 713 (1943).

As in *Taylor v. State, supra,* 55 Wis.2d at 179, the trier of facts was entitled to disbelieve the defendant's testimony, because of inconsistencies and conflicts with other testimony. The evidence in this case was sufficient to support conviction on a party-to-a-crime theory. The defendant's hypothesis of innocence was inconsistent with the facts that the trier of facts was entitled to believe. *Whitmore v. State, supra,* 56 Wis.2d at 714.

We conclude that the prosecutor did not waive reliance on a party-to-a-crime theory. Failure to refer to sec. 939.05, Stats., in the information was, at most, harmless error. The evidence adduced at trial was sufficient to sustain the defendant's convictions.

*By the Court.*—Judgment affirmed.