STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Velma LUND, Defendant-Appellant.

Supreme Court

*No. 79–455–CR. Argued October 29, 1980.—*
*Decided November 25, 1980.*

(Also reported in 298 N.W.2d 533.)

For the petitioner the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the appellant the cause was argued by *Ruth S. Downs,* assistant state public defender, with whom on the brief was *David C. Niblack,* state public defender.

DAY, J.   Defendant-Appellant, Velma Lund (defendant), was convicted on three counts of transferring stolen property and one count of retaining stolen property, in violation of sec. 943.20(1)(a), Stats. 1977.[1]   The court of appeals reversed the conviction.  The principal question on review is whether the court of appeals erred in holding there was insufficient evidence to support the jury's verdicts.  We conclude the court of appeals erred in holding there was insufficient evidence to support the jury's verdicts of guilty.

Three counts of the information filed May 9, 1978, charged that the defendant feloniously transferred meat and lobster valued at more than $100 on March 16, 21 and 22, 1978.  The fourth count charged that she feloniously retained possession of meat valued at more than $100.  The defendant entered pleas of not guilty and was tried before a jury in October, 1978.  The jury returned verdicts of guilty on each of the four counts, except that they found the value of the meat on the fourth charge to be $50.  Judgments of conviction were entered on November 20, 1978.  The defendant was sentenced to inde-

---

[1] "943.20.  **Theft.**  (1) Acts.  Whoever does any of the following may be penalized as provided in sub. (3) :

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property."

terminate terms not to exceed five years on each of the three counts of transferring stolen property and to six months on the fourth count of retaining stolen property. Each of the sentences was to run concurrently.

Each of these charges required the state to prove, beyond a reasonable doubt, that the defendant transferred or retained possession of another's property without consent of its owner.

Defendant appealed the judgments of conviction, arguing that there was no evidence that an owner or owners of the meat (other than defendant) existed or failed to consent to her transfer or retention of the meat.

In an unpublished opinion the court of appeals reversed the judgments of conviction and found that, while nonconsent of an owner may be proved by circumstantial evidence, the evidence presented at trial was insufficient to prove the element of owner nonconsent.[2]

The state of Wisconsin sought review of that decision, which we granted on May 12, 1980.

The question here is: Was there sufficient circumstantial evidence from which the jury could conclude that the meat sold or "transferred" by the defendant was actually stolen? The same question arises as to the sufficiency of the circumstantial evidence to show possession of stolen meat. In both cases proof that the meat belonged to another and was transferred or retained without the owner's consent is required for conviction.[3]

---

[2] The court of appeals' opinion, filed February 7, 1980, was a two-to-one decision, Judge Dykman dissenting.

[3] The trial court properly instructed the jury on the elements of the offense of transferring stolen property as follows:

". . . the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following four elements of this offense. First, that the defendant intentionally transferred movable property of another without lawful authority. Intentionally as used here means the defendant must have had the purpose to transfer property knowing that it belonged to another

The meat came from several different retail stores as shown by the labels on the packages. No representative of any store from which the meat came testified that such packages had actually been stolen from them.

The question then becomes: Can such theft be inferred from the circumstantial evidence offered at trial? We conclude that the facts here warranted the jury's verdicts.

On March 23, 1978, the police, pursuant to warrants, searched the homes of Clifford Trickie, Robert Johansen and the defendant.

The search disclosed 129 packages of meat[4] at Trickie's residence, with a total indicated label value of $1,032.35. Trickie testified that he purchased packages of meat and lobster carrying stores labels from the defendant on March 16, 21 and 22, 1978. He stated that about three-quarters of the seized packages of meat had been purchased from the defendant and about sixty percent of that was purchased from her on March 16, 21 and 22, 1978. He stated that the amounts paid on those dates, $286, $308 and $423.06 respectively, were paid in cash. Trickie stated on each occasion the meat and lobster was delivered to his home by one Larry Roden and that he paid one half the retail price shown on the package la-

and that she had no right to transfer it. Second, that the defendant transferred such property without the consent of the owner of such property. Third, that the defendant knew that such transfer of such property was without consent. Fourth, that the defendant transferred such property with intent to deprive the owner permanently of its possession."

The court's instructions on the charge of retaining stolen property were identical, except that "retained possession of" was substituted for "transferred" where appropriate.

[4] The record shows that the packages seized at each of the homes contained consumer sized cuts of beef, ham and other meats and lobster tails. Typical meat packages bore label prices of $2 to $5, lobster-tail packages were labeled with prices between $10 and $20. Some of the hams bore label prices as high as about $30.

bels. He also testified that he had made prior purchases of meat from the defendant. The packages seized at Trickie's residence bore labels from Sentry Foods in Janesville, Delavan, Greenfield, Milwaukee, Beloit and Janesville, Wisconsin; Super-Valu in Janesville, Woodman's stores in Beloit and Janesville and three other chain stores whose addresses were not shown and a few unidentified packages. Trickie testified that he "ordered" the meat by calling the defendant (whom he knew only by her first name) at her home on March 16 and 21. On March 22 she called Trickie saying she was leaving town and offering to sell Trickie what meat she had left in her freezer. Trickie also testified that he stored some of the meat at home, and sold the remainder (possibly more than half the total) to Robert Johansen on the same dates for the same prices he paid (*i.e.*, one half the indicated label price). Trickie "guessed" that Johansen paid him $200 to $300 on each date. Trickie testified that he sold the meat to his friend Johansen because he had no more room in the two freezers in the basement and the refrigerator-freezer in the kitchen of his residence.

340 packages of meat and lobster were seized at Johansen's residence, with a total indicated label value of $2,121.37. The labels on those packages were from Sentry Foods in Greenfield, Milwaukee, Menomonee Falls, Beloit and Janesville, an unidentified store located in Monona, Wisconsin, Woodman's and three other chain stores whose addresses were not shown, and other packages with no store names. Johansen did not testify.

During the search of her residence, defendant told police that she was moving south. The police found the house nearly empty, but a truck filled with home furnishings was in the driveway. Three freezers were found on the truck, two were empty and one contained

forty-six packages of meat with a total indicated label value of $149.42. The labels on those packages bore the names of four chain stores in Beloit and Janesville, including Woodman's, Sentry Foods and Kohl's. The names of stores could not be determined on other labels.

Larry Roden, after being granted immunity from prosecution pursuant to sec. 972.08(1), Stats. 1977,[5] testified that he delivered meat to Trickie's residence on the dates above. He stated that he delivered the meat at the defendant's request and turned over the purchase price to her. The defendant gave him $30 for delivering the meat to Trickie on March 16 and 22. Roden also testified that he had made two or three other deliveries of meat for her to a tavern owner and that Trickie had picked up meat at Mrs. Lund's residence "twice a month for three or four months."

A police officer testified that the defendant had been receiving aid to dependent children, but that she "went off the rolls" because she was moving south, and that she was not employed.

Roden gave no testimony as to ownership of the items he delivered. Trickie's wife, Shirley Trickie, testified: "I never saw it [the meat] stolen. I did kind of think

---

[5] "972.08. **Incriminating testimony compelled; immunity.** (1) Whenever any person refuses to testify or to produce books, papers or documents when required to do so before any grand jury, in a proceeding under s. 968.26 or at a preliminary examination, criminal hearing or trial for the reason that the testimony or evidence required of him may tend to incriminate him or subject him to a forfeiture or penalty, he may nevertheless be compelled to testify or produce such evidence by order of the court on motion of the district attorney. No person who testifies or produces evidence in obedience to the command of the court in such case shall be liable to any forfeiture or penalty for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, but no person shall be exempted from prosecution and punishment for perjury or false swearing committed in so testifying."

it was funny though in my own mind." Clifford Trickie testified that he never knew whether or not the meat was stolen, although this testimony contradicted an earlier written statement to police which was initialed by him in which Trickie stated: "I can't say I knew it was stolen, no one ever said it was, I never asked anyone but I guessed it was, yes." This statement was introduced in evidence.

The manager of the Sentry Food Store in Beloit, an assistant security director of Kohl's food stores and the general manager of Woodman's testified that none of those stores sell meat or lobster at retail for less than the label prices or after a certain shelf life. Each of the store representatives testified that "old" meat from his store was sold to a soap company. None testified that any package found at Trickie's, Johansen's, or the defendants' homes was taken from any of the witness' stores without consent. Nothing on any package or its label indicated how its possession was obtained from the store. The Beloit Sentry manager testified he had seen the defendant in the store.

The defense presented no witnesses and defendant did not testify.

After the state rested, defense counsel moved the court to dismiss count four of the information, contending that there was no evidence that any of the property found in the defendant's freezer was stolen. The motion was denied.

On appeal, defendant alleged that there was no evidence that an owner of the meat (other than the defendant) existed or failed to consent to her alleged transfer or retention of the meat. Defendant argued that absent such proof, her conviction on each of the four counts denied her due process of law as guaranteed under the State and Federal Constitutions. The state argued that the evidence presented, although en-

tirely circumstantial, was sufficient to support the jury's verdicts. The court of appeals concluded that the element of owner nonconsent may be established by circumstantial evidence, but that the evidence here was insufficient to convict.

■

Each essential element of a crime must be proved by the state beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 364 (1970) ; *Turner v. State*, 76 Wis.2d 1, 10, 250 N.W.2d 706 (1977).

The test applied by this court to determine whether the state has met this burden was stated in *Bautista v. State*, 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971) :

"The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules."

The defendant cites the early case of *State v. Morey*, 2 Wis. 362 (*494) (1853) in which this court held that: "In cases like the present, the general rule undoubtedly is, that the testimony of the owner of the property is indispensible." *Morey* at 364. The court's conclusion rested on an English case, *Rex v. Rogers*, 2 Comp. 654 (1811). That case was later repudiated by the English

courts and the rule has not been accepted in the majority of the states. 7 Wigmore, *Evidence*, sec. 2089 at 577 (rev. ed. 1978).[6] For example, in *State v. Butler*, 82 Ariz. 25, 29, 307 P.2d 916 (1957), the Supreme Court of Arizona rejected the *Morey* rule and expressly adopted the "modern rule" that nonconsent of the owner in theft cases can be established by circumstantial evidence alone. In *Powell v. U. S.*, 418 F.2d 470 (D.C. Cir. 1969), the court upheld the conviction of the defendant on a charge of driving a motor vehicle without the consent of its owner. The court in *Powell* observed that:

". . . the government's presentation combined circumstances which a jury might accept as a negation of all probative deductions of consent. We perceive no reason why nonconsent, like other elements of the offense, cannot be shown by circumstantial evidence so long as it meets the standards of proof accepted in the criminal law." 418 F.2d at 474.

More recent cases of this court have also eroded the force of the *Morey* rule. See, for example, *Warrix v. State*, 50 Wis.2d 368, 377, 184 N.W.2d 189 (1971); *Mitchell v. State*, 84 Wis.2d 325, 338, 267 N.W.2d 349 (1978); *Fetkenhauer v. State*, 112 Wis. 491, 494, 88 N.W. 294 (1901).

We concur with the view taken by the court of appeals that owner nonconsent, like other elements of criminal offenses, may be proven by circumstantial evidence.[7]

---

[6] Wigmore strongly criticizes the *Morey* rule concluding that:

"So far as policy is concerned, there is nothing to be said in its favor. The accused is amply protected by the rule of reasonable doubt . . ." Wigmore at 578–579.

[7] The defendant, in her brief in this Court concedes expressly that "circumstantial evidence can be used to establish the existence of a fact essential to conviction."

This court has frequently stated that circumstantial evidence may be as convincing as direct evidence. *State v. Johnson,* 11 Wis.2d 130, 134, 104 N.W.2d 379 (1960). As the court in *Johnson* observed:

"The same rule of the burden of proof in a criminal case applies to circumstantial evidence as to positive direct evidence; and in both cases the evidence must be sufficiently strong and convincing to establish the facts of guilt beyond a reasonable doubt in the mind of the trier of facts." *Johnson* at 134–135.

The test of whether circumstantial evidence meets the demanding "beyond a reasonable doubt" standard was recently stated by this Court in *State v. Charbarneau,* 82 Wis.2d 644, 655–656, 264 N.W.2d 227 (1978):

" 'The evidence does not have to remove every possibility before a conviction can be sustained. *See State v. Eberhardt* (1968), 40 Wis.2d 175, 161 N.W.2d 287. The test stated in *State v. Johnson* (1960), 11 Wis.2d 130, 136, 104 N.W.2d 379, in "that all the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main fact sought to be proved and the circumstances taken together must be of. a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no other person committed the offense charged." The circumstantial evidence must, however, be sufficiently strong to exclude every reasonable theory of innocence, that is, the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility.' *State ex rel. Hussong v. Froelich,* 62 Wis.2d 577, 586, 215 N.W.2d 390 (1978)."

The evidence shows that the defendant transferred to Clifford Trickie, within one week of her arrest, packages of meat and lobster with an indicated label value of more than $2,000. The evidence also showed that the defendant was not employed and had recently been

receiving aid to families with dependent children. Mere possession of valuable goods by an impecunious person is not proof that the goods were stolen. But here there was more. The testimony of the store representatives showed that none of those stores sold meat for less than the indicated label value. Yet the defendant sold the meat to Trickie for one half the label value. Both Trickie and his wife made statements suggesting their belief that they were purchasing stolen property, although Mr. Trickie repudiated this statement at trial.

This court has held that "a trier of fact may infer from the presence of many similar articles that the recipient of the property is engaged in the practices of selling stolen goods." *State v. Spraggin*, 71 Wis.2d 604, 618, 239 N.W.2d 297 (1976). That case also recognized that a gap between market value and sale price of property is a proper factor for the jury to consider in determining whether goods were stolen. *Spraggin* at 618.

We conclude that the jury could find that the evidence considered by it was inconsistent with any *reasonable* hypothesis of innocence, *State v. Charbarneau, supra*, and that the meat possessed by the defendant and transferred by the defendant to Trickie was the property of another and that she knowingly transferred or retained it without the consent of its owner.

The defendant cites *State v. Godsey*, 272 Wis. 406, 75 N.W.2d 572 (1956). In that case this court overturned a conviction of receiving stolen property where there was no evidence that the car in the possession of the defendant was stolen. Here, the evidence goes further. The quantity of meat involved here, unlike the car in *Godsey*, was not something commonly possessed by the ordinary citizen. More importantly, in this case the property was sold at a below market value, strengthening the inference that the property was stolen.

We therefore reverse the court of appeals and uphold the defendant's conviction on all four counts.

*By the Court.*—The decision of the court of appeals is reversed and the judgments of the trial court are affirmed.