[Case No. 83–1896–CR]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Loretha KING, Defendant-Appellant.

[Case No. 83–2368–CR]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Eddie D. YANCEY, Defendant-Appellant.

Court of Appeals

*No. 83–1896–CR, 83–2368–CR. Submitted on briefs May 16, 1984.— Decided July 6, 1984.*
(Also reported in 354 N.W.2d 742.)

For defendant-appellant Loretha King the cause was submitted on the briefs of *William J. Tyroler,* assistant state public defender, of Milwaukee. For defendant-

appellant Eddie D. Yancey the cause was submitted on the briefs of *Gimbel, Gimbel & Reilly,* with *Jeffrey A. Kaufman* of counsel, of Milwaukee.

For plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Marguerite M. Moeller,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J. Loretha King (King) and Eddie D. Yancey (Yancey) appeal from their convictions for robbery, in violation of secs. 943.32(1)(b) and 939.05, Stats., and armed robbery in violation of secs. 943.32(1)(a) and (2) and 939.05, Stats. Yancey also appeals from the denial of his postconviction motion pursuant to sec. 974.06, Stats.[1]

On October 17, 1982, King met Major Ward (Ward) at a tavern and agreed to engage in sexual relations. King took Ward to a residence at 204 West Wright Street in Milwaukee. When the couple arrived at the residence Yancey and two others were there. When King told them to leave, Yancey and the others went upstairs. King then asked for $20 from Ward, but he refused to pay. King then called Yancey from upstairs. Yancey returned and demanded the money. When Ward refused, Yancey hit him in the face. A fight broke out, during which Yancey obtained Ward's wallet. Yancey then demanded Ward's coat, so Ward gave Yancey his coat and hat. Ward had $30 in his wallet. Ward reported the matter to police. Ward later reclaimed his wallet and hat, but not his money or his coat. It must be noted that King did not participate in the physical encounter between Ward and Yancey. These allegations resulted in King and Yancey being charged in separate complaints with robbery, party-to-the-crime.

---

[1] Separate appeals were filed in this case but the issues of misjoinder and severance are the same. We have consolidated these appeals pursuant to sec. 809.10(3), Stats.

On November 24, 1982, King met Gregory McDonald (McDonald) outside a liquor store. King got into Mc-Donald's automobile and they drove McDonald's friends to where they wanted to be left off. McDonald and King went to 2518 North 3rd Street and entered an apartment. Once inside the apartment, King went to the bathroom and later emerged partially undressed. King asked McDonald if he had any money. He responded that he only had some change.

King returned to the bathroom and emerged with Yancey and another person. Yancey had what appeared to be a machete-like, long-blade knife. Yancey grabbed McDonald about the throat and demanded McDonald's money. McDonald had $10 to $13 in his pockets. Yancey took it. While Yancey held McDonald by the neck and brandished the machete, King searched him. She found approximately $140 in McDonald's socks. Yancey then ordered McDonald to leave. These allegations resulted in King and Yancey being charged in separate complaints with armed robbery, party-to-the-crime.

King and Yancey were charged in separate actions with separate identical complaints. After separate preliminary hearings the district attorney's office moved to consolidate the complaints against both King and Yancey. Over the objections of King and Yancey, all charges against both of them were consolidated for trial purposes. The jury verdict found both King and Yancey guilty of robbery and armed robbery, party-to-the-crime.

On appeal, both parties contend that their trials were misjoined and that severance was improperly denied. King separately contests the sufficiency of the evidence of the robbery, party-to-the-crime charge and Yancey's separate issue is partiality of the jury.

## MISJOINDER

King and Yancey were each convicted of robbery and armed robbery in the consolidated trial. The defendants

argue on appeal that their trials were misjoined under sec. 971.12(2), Stats. This statute provides that joinder of defendants is proper, "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more crimes." This section is identical to Rule 8(b) of the Federal Rules of Criminal Procedure. The thrust of the defendants' argument is that no showing was made of a close interconnection between the robbery of Ward and the armed robbery of McDonald. The district attorney's motion for consolidation of the two cases alleged that each case was "a similar type offense," involving "a pattern of conduct on behalf of both defendants." This allegation was insufficient, the defendants argue, to meet the criteria for joinder.

Section 971.12(2), Stats.,[2] has not been interpreted by Wisconsin courts. Our supreme court, in recognizing the similarity between Wisconsin's statute and the federal rule, has looked to federal cases for guidance on the joinder issue.[3] Federal Rule 8(a), the counterpart to our sec. 971.12(1), Stats., applies only to the joinder of offenses against a single defendant, while Federal Rule 8(b) and our sec. 971.12(2), apply when more than one defendant is charged.[4]

Section 971.12(2), Stats., does not define what is meant by "the same series of acts or transactions." This

---

[2] Sec. 971.12(2), Stats., reads as follows:

Joinder of Defendants. Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

[3] *Francis v. State*, 86 Wis 2d 554, 557, 273 N.W.2d 310, 312 (1979).

[4] *United States v. Bledsoe*, 674 F.2d 647, 656 (8th Cir. 1982); *see* 8 J. Moore and R. Cipes, Moore's Federal Practice § 8.06(1), at 8–25 (2d ed. 1984).

phrase, however, has been interpreted to allow joinder of defendants if a "common plan or scheme" was present.[5] When two offenses are committed close together in time, location, and in a similar manner, such a pattern contributes to establishing joint action or a common scheme or plan for purposes of joinder.[6] Courts also look to whether the joined defendants both participated in the alleged acts[7] and whether proof of the charged offenses overlaps.

In the instant case we hold that the trial court's joinder of Yancey and King on the robbery and armed robbery charges was proper. Both crimes were instigated by King's prostitution. Both times King called upon Yancey and both times Yancey systematically robbed the men who refused to pay for King's services. King actively participated in the armed robbery and aided in the other robbery. The offenses occurred within a city block of each other, about one month apart and each was undertaken in a similar manner. The fact that Yancey used a machete to rob McDonald, but used no weapon to rob Ward does not undercut the evidence of a common plan or scheme, and similar types of offenses involving a pattern of conduct on behalf of both defendants.

There is sufficient evidence of a common plan or scheme to establish that the two offenses were based on "the same series of acts or transactions," within the meaning of sec. 971.12(2), Stats.

---

[5] C. Wright, Federal Practice and Procedure: Criminal 2d § 144, at 502 (2d ed. 1982).

[6] 9 Federal Procedure L. Ed. § 22:615, at 260 (2d ed. 1982) citing at nn. 24, 25 and 26 *Rhone v. United States,* 365 F.2d 980 (D.C. Cir. 1966); *United States v. Green,* 561 F.2d 423 (2d Cir. 1977), *cert. denied,* 434 U.S. 1018 (1978); *United States v. Rogers,* 475 F.2d 821 (7th Cir. 1973).

[7] *Bledsoe, supra* note 4, at 656.

King and Yancey also contend that the trial court relied on the wrong statutory section in deciding joinder was proper. The trial court, as well as counsel for the parties, all mistakenly believed sec. 971.12(1), Stats., was applicable when, in fact, sec. 971.12(2), Stats., was the proper section. Despite this error, the trial court reached the correct result in finding joinder proper. If a trial court reaches the proper result for the wrong reason it will be affirmed.[8]

## SEVERANCE

King and Yancey further argue that the trial court failed to sever their trials under sec. 971.12(3), Stats. The defendants must show substantial prejudice as a result of the court's denial of severance to establish an abuse of discretion by the trial court.[9]

The defendants contend that evidence of the October 17 robbery of Ward would not have been admissible at their separate trial on the November 24 armed robbery of McDonald. Consequently, they argue that admitting evidence of both the armed robbery and the robbery in their joint trial was unduly prejudicial. They cite as support for their argument sec. 904.04(2), Stats., which deals with admission of "other crimes" evidence.[10]

---

[8] *Liberty Trucking Co. v. DILHR,* 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463–64 (1973) ; *Mueller v. Mizia,* 33 Wis. 2d 311, 318, 147 N.W.2d 269, 273 (1967).

[9] *State v. Hoffman,* 106 Wis. 2d 185, 209, 316 N.W.2d 143, 157 (Ct. App. 1982).

[10] Sec. 904.04(2), Stats., reads as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We need not reach the issue of whether evidence of one crime would have been admissible at a separate trial for the second crime. An examination of the record shows no motion for severance was made by either defendant. The defendants made absolutely no showing of how a joint trial would be prejudicial. A defendant can waive a claim of prejudicial joinder by failing to particularize the reasons for severance in the trial court.[11]

Because no motion for severance was made and because the defendants failed to specify how they would be prejudiced by a joint trial, their respective claims of prejudicial joinder were waived.

## KING'S CLAIM OF INSUFFICIENT EVIDENCE

King separately claims there was insufficient evidence to convict her as a party to the robbery of Ward because she was an innocent bystander.

Mere presence and ambivalent conduct at the scene of a crime are insufficient to support a conviction.[12] A fact finder may not indulge in inferences wholly unsupported by any evidence.[13] On appeal, the question of sufficiency of the evidence is not whether the court is convinced beyond a reasonable doubt by a reading of the trial record. Rather, the question is whether the evidence, considered most favorably to the state, is so insufficient in probative value and force that no jury acting reasonably could be convinced beyond a reasonable doubt.[14]

---

[11] *See* sec. 971.12(3), Stats.; *Holmes v. State*, 63 Wis. 2d 389, 398, 217 N.W.2d 657, 662 (1974); *Lampkins v. State*, 51 Wis. 2d 564, 572, 187 N.W.2d 164, 168 (1971).

[12] *State v. Charbarneau*, 82 Wis. 2d 644, 656, 264 N.W.2d 227, 233 (1978).

[13] *Id.*

[14] *State v. Olson*, 103 Wis. 2d 455, 462, 308 N.W.2d 917, 921 (Ct. App. 1981).

Ward testified that King invited him to her apartment where they found Yancey. King told Yancey to leave and he went upstairs. King then asked Ward for money for sex. Ward refused. King went to the door and called upstairs for Yancey. Yancey entered the room and King advised him that Ward had wasted her time and would not pay. Yancey said to Ward, "don't you know when my woman be out on the stroll they be out for the money," whereupon, Yancey attacked Ward and took his wallet, hat, jacket and $30. King did not enter into the fight. She stood at the doorway to the room.

Ward immediately reported the matter to the police and one of the responding officers, police officer Gregory Thompson (Thompson), testified that after he and his partner contacted Ward the three of them went to the building at 204 West Wright Street. On the pavement outside the building they found a welfare identification form from Ward's wallet. In a hallway near the entranceway to King's apartment, they found Ward's empty wallet. King then identified herself to Thompson as Cynthia Dale and stated that the apartment was hers. Thompson testified that on entering the apartment he saw Ward's red and white baseball cap on the fireplace mantel which cap Ward had described before entering the apartment. The cap was distinctive because of the phrase printed on it which read: "Have a nice day before some bastard louses it up."

We are satisfied that there was sufficient credible evidence such that rational inferences could be drawn by a reasonable jury to conclude beyond a reasonable doubt that King aided and abetted in the robbery of Ward's money, wallet, cap and jacket. Therefore, King's conviction is affirmed.

## PARTIALITY OF THE JURY

Yancey further appeals from a denial of a motion for mistrial and a denial of a postjudgment motion for new trial, both on the basis of partiality of the jury. Yancey claims on appeal that he was denied the constitutional right to an impartial jury.[15] On the morning of the second day of trial a juror, Robert Hagler (Hagler), reported to the bailiff that he knew the complaining witness, McDonald, who had testified as the victim of the armed robbery. The trial judge and Yancey's counsel conducted *voir dire* of Hagler in chambers. Hagler said that when he was initially *voir dired* at the start of the trial, he did not identify the name "Gregory McDonald" with anyone he knew. But, when McDonald testified, Hagler recognized McDonald as a coemployee with whom he had worked at the Harley Davidson plant for a little more than one year. Hagler knew McDonald only as a co-worker and as the brother-in-law of another co-worker. Hagler testified that his only relationship with McDonald was one of co-workers who exchange greetings in the workplace. Hagler also told counsel and the trial judge that his past relationship with the complaining witness would not affect his judgment.

Both King and Yancey made motions for mistrial claiming they were prejudiced by the denial of causal or preemptive strikes, and that they were denied the constitutional right to an impartial jury. The trial court denied the motion on the basis that Hagler had admitted straightforwardly his prior contact with McDonald as soon as he became aware of it. When *voir dired* on the issue of whether these previous contacts would add to or detract from the credibility that should be given to McDonald's testimony, Hagler's response was "no." The

---

[15] U.S. Const. amend. VI; Wis. Const. art. I, § 7.

trial judge also stated that he was satisfied that this answer was truthful.

The trial court analyzed the possible prejudice to King and Yancey because of their claimed loss of causal or preemptive challenges. The court noted that such situations frequently arise in the trial courts without intentional misconduct by any party and that such motions were denied for lack of intentional misconduct.

Determination of a juror's impartiality is committed to the sound discretion of the trial court. The standard of review of a trial court's ruling on juror impartiality is that it will be reversed only for an abuse of discretion.[16] In midtrial, when a juror is surprised to discover he once knew a witness, the trial court and counsel *voir dire* that juror to establish possible partiality, and when none is shown, it is proper for the trial court to find no prejudice in the juror.[17] The trial court did not abuse its discretion in refusing to grant a mistrial because of alleged juror bias, or because King and Yancey lost causal or preemptive strikes due to the juror's unknowing error.

*By the Court.*—Judgments and order affirmed.

---

[16] *Paper Mach. Corp. v. Nelson Foundry Co.*, 108 Wis. 2d 614, 629, 323 N.W.2d 160, 167 (Ct. App. 1982).

[17] *Id.*