STATE of Wisconsin, Plaintiff-Respondent,

v.

John R. MARTINEZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 87-2271-CR. Argued April 26, 1989.—Decided June 7, 1989.*

(Also reported in 441 N.W.2d 690.)

For the defendant-appellant-petitioner there were briefs by *Matthew H. Huppertz* and *Carlson & Huppertz, S.C.,* Waukesha, and oral argument by *Matthew H. Huppertz.*

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

SHIRLEY S. ABRAHAMSON, J.   The defendant, John R. Martinez, seeks review of an unpublished decision of the court of appeals filed on September 7, 1988, affirming the defendant's conviction in the Circuit Court for Racine County, Emmanuel Vuvunas, Judge. The defendant was convicted as party to a crime (sec. 939.05, Stats. 1985–86) on charges of attempted murder with a dangerous weapon, in violation of secs. 939.32 (attempt) and 940.01 (1) (murder), Stats. 1985–86, and endangering safety by conduct regardless of life, in violation of 941.30, 1985–86. The jury determined that the defendant had not committed the crimes while using a dangerous weapon; sec. 939.63, 1985–86, provides a penalty enhancement for committing certain crimes while possessing, using or threatening to use a dangerous weapon.

We are presented with two issues. First, the defendant argues that the evidence at trial was insufficient to support the convictions. Second, the defendant maintains that admission of evidence that there were cocaine metabolites in his bloodstream at the time of the shooting was prejudicial error. We conclude, as did the court of appeals, that there was sufficient evidence to support the convictions on both charges. We also conclude, as did the court of appeals, that the admission of the cocaine evidence was harmless error.

This case arose from a shooting incident that resulted in injury to two men. The defendant was tried jointly with his brother, Jose Martinez, whose conviction this court has also reviewed upon a separate petition. *State v. Martinez,* 150 Wis. 2d 62, 440 N.W.2d 783 (1989).

The basic facts underlying this review are undisputed. Late in the evening of February 6, 1986, Jose and John Martinez went to Hunter's Bar in Racine. The brothers were both wearing dark trench coats and sunglasses and were accompanied by a seventeen year-old girl. David Quiroz, a part-time bartender and bouncer at the bar, was on the premises but was not working at the time. Quiroz asked the defendant to leave because his friend was under age. A fight ensued, during which Quiroz and others succeeded in forceably ejecting the Martinez brothers from the bar.

As the fight continued outside the bar, witnesses observed Quiroz repeatedly punching the defendant while the defendant threatened to kill Quiroz. In the course of these events, the defendant made a motion with his hand as if to reach into his coat. A patron of the bar who had been restraining Jose Martinez turned his attention toward the defendant, and the bar owner frisked the defendant but found no weapon. The defen-

dant's brother, Jose Martinez, pulled out a gun and fired, striking Quiroz. The bullet passed through Quiroz's body and into the abdomen of a bystander. Jose Martinez then attempted to pass the gun to the defendant, who moved to take it but was stopped by the bar owner, who took the gun and used it to hold the brothers until the police arrived.[1]

The defendant and his brother Jose were tried jointly. The case was tried on the theory that Jose Martinez was the direct actor and the defendant the aider and abettor. Jose Martinez was charged with attempted murder with a dangerous weapon for the shooting of Quiroz, and with endangering safety by conduct regardless of life for the injury to the bystander. The defendant was charged as party to a crime on both of these counts. The defendants were not charged with conspiracy, and the jury was not instructed as to conspiracy.

The defendant did not testify at trial. Jose Martinez testified on his own behalf, stating that he had never informed the defendant that he, Jose Martinez, was carrying a gun, and that the defendant did not in fact know that Jose Martinez had a gun. Jose Martinez also testified that he did not hear the defendant threaten Quiroz and did not see the defendant reach into his coat. Jose Martinez testified that, after the shooting, he tried to hand the gun to the defendant "[b]ecause I was scared. I didn't know what to do with it, so I started handing it to my brother, and that's when [the bar owner] came in and grabbed it."

---

[1] The bystander who was shot offered a somewhat different version of the events after the shooting. The bystander testified that Jose Martinez passed the gun to the defendant, who threw it in the grass nearby. Then, according to this witness, the bar owner came out of the bar with a different gun, which he used to hold the brothers.

Over the defendant's objection, the circuit court admitted evidence from laboratory reports that revealed that cocaine metabolites were present in the defendant's blood at the time of the incident.

The jury found Jose Martinez guilty on all counts.[2] The jury found the defendant guilty as party to the crimes of attempted murder and endangering safety, but not guilty of weapon enhancement.

The defendant was sentenced to an indeterminate sentence of twelve years for the attempted murder and five years for endangering safety, concurrent. The defendant and his codefendant, Jose Martinez, separately appealed their convictions.

## I.

The defendant maintains that there was insufficient evidence to support the convictions on the aiding and abetting charges. Thus, the question before this court is "[w]hether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the [defendant's] guilt beyond a reasonable doubt." *State v. Marshall*, 92 Wis. 2d 101, 120, 284 N.W.2d 592 (1979).

The crime of aiding and abetting consists of two elements: 1) "some conduct (either verbal or overt), which as a matter of objective fact aids another person in the execution of a crime"; and 2) conscious desire or intent "that the conduct will in fact yield such assistance." *State v. Marshall, supra*, 92 Wis. 2d at 122.[3]

---

[2] Jose Martinez was also charged with being armed with a firearm while intoxicated, in violation of sec. 941.20 (1)(b), Stats. 1987-88.

[3] The Wisconsin pattern jury instruction for the offense of aiding and abetting, which was given to the jury in this case, presents the *Marshall* test in a somewhat different form:

The first prong of the *Marshall* test calls for examination of the defendant's verbal and overt conduct.

The state argues that the defendant's threats, directed toward Quiroz just prior to the shooting, were verbal conduct demonstrating that the defendant was ready and willing to render aid. According to the state, the jury could have concluded that Jose Martinez heard the threats and interpreted them as an indication of his brother's readiness and willingness to assist in the crimes that were subsequently committed. Under *State v. Charbarneau,* 82 Wis. 2d 644, 652, 264 N.W.2d 227 (1978), a person's being ready and willing to aid in commission of a crime is conduct which objectively aids the person who commits the crime if the actor knows of the accomplice's readiness and willingness to help.

The defendant argues that the knowledge component of the state's "verbal conduct" theory was not satisfied in this case without significant manipulation of the facts adduced at trial. Under *Charbarneau,* there must be proof that the actor knows of the accomplice's readiness and willingness to assist. Jose Martinez testified at trial that he did not hear the defendant's threats. Thus, the defendant argues, his threats could not have consti-

---

A person intentionally aids and abets the commission of a crime when, acting with knowledge or belief that another person is committing or intends to commit a crime, he knowingly either

    (a)   renders aid to the person who commits the crime, or

    (b)   is ready and willing to render aid, if needed, and the person who commits the crime knows of his willingness to aid him. Wis. JI—Criminal 400 (1962).

This court has determined that the pattern jury instruction is an appropriate formulation of the test, because it is reasonable to assume "that one known to be ready and willing to render aid is considered to be aiding the person who commits the crime as a matter of objective fact." *State v. Charbarneau,* 82 Wis. 2d 644, 652, 264 N.W.2d 227 (1978).

tuted verbal conduct for purposes of the aiding and abetting statute unless the jury completely disregarded Jose Martinez's uncontroverted testimony.

We conclude that a jury could have chosen to disbelieve Jose Martinez. Jose Martinez was a codefendant with an interest in the outcome of the case and an interest in the outcome of his brother's case. There was testimony that Jose Martinez idolized the defendant and that the defendant was the leader of the two brothers. There were witnesses standing near Jose Martinez, and they heard the defendant's threats. The record thus supports the state's argument that the jury could have disbelieved Jose Martinez.

Furthermore the record contains evidence of the defendant's overt conduct, the defendant's motion of reaching toward his coat, to satisfy the conduct element of aiding and abetting. The state maintains that the defendant's motion toward his coat was overt conduct which aided Jose Martinez in committing the crimes. Jose Martinez was being restrained by a patron of the bar when the defendant reached toward his coat. Upon observing the defendant's motion, the bar patron released Jose Martinez and reached for the defendant. Jose Martinez then pulled a gun and fired at Quiroz.

The state argues that the jury could have determined that the defendant's motion toward his coat aided Jose Martinez in two ways. First, the jury could have inferred that the defendant's motion was a signal to Jose Martinez that it was time for his brother to draw his weapon. At least three witnesses described the defendant's motion as being like a person reaching for a gun. One witness testified, however, that the defendant might have been reaching into his coat for a handkerchief to wipe the blood from his face.

54

The jury could have concluded that the defendant's motion, whether a signal or a deliberate feint or merely a distracting movement, had the effect of assisting Jose Martinez in the shooting. A reasonable jury could have been convinced beyond a reasonable doubt that the defendant's motion toward his coat was overt conduct that objectively aided and abetted his brother in the shooting.

The other element necessary to prove the crime of aiding and abetting is intent, the abettor's intention that his or her acts will assist in the execution of the crime. *Marshall, supra,* 92 Wis. 2d at 122. The state offers the defendant's threats as evidence of the defendant's intentions. Witnesses testified that just before reaching toward his coat, the defendant made several statements threatening Quiroz's life. Quiroz testified that the defendant said, "Quiroz, you fucked up. You're a dead man . . . .. I'm going to kill you, you're a dead man," and "we know where you live." The bar owner heard the defendant say, "I swear to God, David [Quiroz], you're going to die." And the bystander who was shot heard the defendant say "[D]on't make me do this to you, Dave." Another witness testified that he thought he heard one of the Martinez brothers (he wasn't sure which one) say to Quiroz, "we will kill you."

Jose Martinez testified that the defendant did not know that he (Jose) was carrying a gun. This testimony was uncontroverted. Since the defendant would have to know about the gun in order to form the intent to aid and abet a shooting, he argues, the state's case is based on insufficient evidence of intent. In order to find intent, the jury would have had to disbelieve Jose Martinez's testimony and come to the opposite conclusion. There is not sufficient evidence, according to the defendant, to

support such an unlikely inference.[4]

[4] The defendant argued at oral argument that some significance should be attached to the fact that the jury convicted the defendant of aiding and abetting in the commission of the two offenses but also concluded that the defendant had not aided and abetted the commission of the crimes while using a dangerous weapon. The defendant concedes that inconsistency in verdicts is not *per se* grounds for reversal, but he argues that this inconsistency indicates that the jury was confused and unsure about the defendant's knowledge of his brother having the gun and therefore the jury was more likely to have been influenced by the erroneously admitted evidence of the defendant's use of cocaine.

The state responds that the jury's conclusion about the weapon issue is readily explainable by the jury instructions. The jury instruction about aiding and abetting was given in connection with the two substantive crimes but was not given together with the instruction about committing the crimes while using a dangerous weapon. Furthermore the instruction about committing the crimes while using a dangerous weapon was phrased in terms of "the defendant," in the singular, and was given along with an instruction which related only to Jose Martinez. In other words, the party to a crime statute was not effectively integrated with the instruction on committing a crime while using with a dangerous weapon.

We have read the jury instructions and conclude that a reasonable jury would not necessarily understand that the aiding and abetting instruction relates to the instruction about committing a crime while using a dangerous weapon. Thus on the basis of these instructions it is easily understandable that the jury might conclude that the defendant knew about his brother's gun and that only Jose Martinez committed the crimes while using a dangerous weapon.

We will not speculate as to the cause or meaning of the jury's verdict on the weapons issue. We are not persuaded that the inconsistency is a meaningful indication that the jury convicted the defendant on the basis of insufficient evidence. In light of our conclusion that there was sufficient evidence to uphold the jury's

The state responds that it would be entirely reasonable, for the reasons set forth above, for the jury to conclude that Jose Martinez testified falsely. Furthermore, the state contends that the jury could infer from the evidence in the record that the defendant knew that his brother had a gun. The jury was told that the brothers were close, that they lived together and that they had been together all evening. Jose Martinez testified that he regularly carried a gun for protection when he was at places like Hunter's Bar where he was visiting that night. The state argues that the record contains evidence which could lead a reasonable jury to conclude that the defendant knew his brother had a gun and that Jose Martinez would lie in order to protect the defendant.

The state further suggests that the short interval between the defendant's reaching motion and the shooting might have led the jury to conclude that the defendant intended his action to be a signal to his brother to use his gun.

The state asserts that Jose Martinez's trying to pass the gun to the defendant immediately after the shooting and the defendant's apparent willingness to accept it are further evidence of the defendant's intent or desire to aid his brother. The defendant's closing argument seems to raise the alternative inference that the defendant's reaching for the gun was a reflex action in response to his brother's holding it out to him.

---

conviction, we need not and should not attempt to weigh the parties' conflicting theories as to the meaning of the jury's decisions. See LaFave and Israel, *Criminal Procedure,* sec. 23.7 (e), pp. 892–93 (1985); *Teske v. State,* 256 Wis. 440, 447, 41 N.W.2d 642 (1950); *State v. Mills,* 62 Wis. 2d 186, 191, 214 N.W.2d 456 (1974); *Nabbefeld v. State,* 83 Wis. 2d 515, 529, 266 N.W.2d 292 (1978).

We conclude that the record contains sufficient evidence supporting the jury's verdict that the defendant intended or desired to aid and abet his brother in the shooting. In short, the jury was offered a choice of inferences which might logically proceed from the facts presented at trial. We conclude that the jury could logically have been convinced, beyond a reasonable doubt, that the defendant's threats, together with his other actions, communicated an intent to aid and abet his brother in commission of the crimes charged in this case.

This court does not sit as a jury to determine guilt. We consider only whether the jury "could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *State v. Marshall, supra,* 92 Wis. 2d at 120. Examination of the record in this case convinces us that the jury's conviction is supported by sufficient evidence.

## II.

The second question presented is whether the circuit court committed prejudicial error in admitting evidence that a metabolite of cocaine was present in the defendant's blood at the time of the shooting.

A state crime laboratory analyst testified at trial that a blood test indicated that the defendant had ingested cocaine "not more than twelve hours or less than three hours" before the test was taken. The circuit court ruled that this evidence was admissible because it was relevant to the defendant's state of mind and to the question of "whether or not he was a bystander or an active participant."

The defendant argues, and the state concedes, that the evidence was irrelevant and should have been

excluded. The court of appeals concluded, however, that the error was harmless. We agree with the court of appeals.

In deciding whether an error is prejudicial, we ask whether there is a reasonable possibility that the error contributed to the conviction. The party benefitting from the error, here the state, has the burden of proving that the error did not influence the jury or that it had such slight effect as to be *de minimus. State v. Dyess,* 124 Wis. 2d 525, 541–42, 370 N.W.2d 222 (1984).

In its closing statement, the state reminded the jury of the cocaine evidence:

> "John [the defendant], a .18 [blood alcohol], cocaine in his system, an anti-epileptic drug which is not a therapeutic also in his system and drinking to excess and going into bars where you're not allowed. And then you have to imagine yourself going in and provoking the people who own the bar. And you're the one who thinks you need to be protected. Provoking the female fiance of the bar owner by not taking off your sunglasses. Did John not want Lisa to see the evidence of cocaine in his system? Is that why he was wearing the sunglasses? Were they just being cool, hard, threatening, wearing dark glasses that late at night . . . Now you've got the three perfect ingredients for an outlaw. You have booze, bar fights, and a loaded gun."

The state also mentioned the cocaine once in its rebuttal argument: "He [defense counsel] didn't like the fact that I brought as evidence the fact that John was using cocaine sometime before this incident."

The defendant argues that the state used the evidence of cocaine to enhance its characterization of the defendant as an "outlaw." Because cocaine use is a viola-

59

tion of the criminal law and is associated with criminal activities, the state used the evidence, asserts the defendant, to convince the jury that the defendant was a bad man and likely to have been involved in the shooting. The defendant further argues that, by limiting admissibility of other crime evidence in sec. 904.04(2), Stats. 1987-88, the legislature has declared that erroneous admission of evidence of other crimes evidence is "inherently prejudicial."

Although erroneously admitted evidence of other crimes may in some cases be unduly prejudicial and may constitute reversible error, we have not held that erroneous admission of other crimes evidence is, *per se,* reversible error. *See, e.g., State v. Sonnenberg,* 117 Wis. 2d 159, 178-180, 344 N.W.2d 95 (1984).

The state argues that the error in this case was harmless because the state did not attempt to use the testimony about the cocaine to prove the defendant's intent to aid and abet his brother. There was no testimony concerning the possible effect of cocaine on the defendant's actions or state of mind.

We conclude that admission of the evidence of the defendant's use of cocaine was not prejudicial error. The laboratory analyst who testified about the presence of cocaine in the defendant's blood did not elaborate on the fact. The analyst did not discuss the amount of cocaine likely to have been ingested and offered no testimony on the effect the cocaine might have had on the defendant's actions or state of mind.

Although the state did refer to the defendant's cocaine use in its closing argument, the evidence was not central to the state's "outlaw" argument. Moreover, the record shows that the lab analyst also introduced evidence that the defendant had two other substances in his

blood at the time of the shooting—alcohol and a non-therapeutic level of Phenytoin, an anti-epileptic drug. The defendant has not challenged the admission of this other evidence.

Thus, on examination of the record as a whole, we conclude that the effect, if any, of the erroneous admission of the evidence of defendant's cocaine use was *de minimis* in this case. The references were infrequent, were not developed by argument, and were obscured by the evidence of other substances in the defendant's blood. We conclude that the erroneous admission of the evidence of defendant's cocaine use was harmless error.

For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.