STATE of Wisconsin, Plaintiff-Respondent,

v.

Donald J. JOHNSON, Defendant-Appellant.

Court of Appeals

*No. 93–1103–CR. Submitted on briefs October 4, 1993.—Decided April 27, 1994.*

(Also reported in 516 N.W.2d 463.)

327

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Carl W. Chesshir*, of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David J. Becker*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. Donald J. Johnson appeals from a judgment convicting him of battery and second-degree reckless endangerment as a repeater, contrary to §§ 939.62(1)(b), 940.19(1) and 941.30(2), STATS., and from an order denying his motion for postconviction relief. On appeal, Johnson challenges the trial court's exclusion of two categories of other acts evidence buttressing his theory of defense that the victim falsely accused him of the offenses with which he was charged. He also argues that the court failed to honor his constitutional right to represent himself and that the evidence was insufficient to support his conviction for second-degree reckless endangerment.

We reverse the trial court's ruling as to one aspect of Johnson's proffered other acts evidence, and we remand for a new trial. Because of our holding, we do not address the trial court's other evidentiary ruling. However, we direct the trial court on remand to readdress this ruling in light of our reversal. We also affirm the court's ruling that Johnson's self-representation right was not violated. Finally, we hold that the evidence was sufficient to convict Johnson of second-degree reckless endangerment.

Johnson's convictions resulted from allegations by Karen Petersen, Johnson's former live-in girlfriend. Petersen contended that during an argument at their apartment Johnson threw her over some furniture, beat her head against the wall, choked her and held a knife to her throat while threatening to kill her. Based on these allegations, the State charged Johnson with battery and second-degree reckless endangerment while using a dangerous weapon. Johnson denied that these events occurred, contending instead that Petersen lied about the episode to have him arrested so that she could misappropriate certain of his personal property while he was incarcerated. The jury found Johnson guilty of battery and second-degree reckless endangerment, but acquitted him of second-degree reckless endangerment while using a dangerous weapon. Johnson appeals.

We will recite additional facts as they become relevant to our discussion of the appellate issues.

## I. OTHER ACTS EVIDENCE

Johnson first argues that he was denied a fair trial by the trial court's exclusion of two categories of other acts evidence supporting his theory of defense that the victim, Karen Petersen, falsely accused him so that she could misappropriate his personal property while he was incarcerated. We reverse and remand for a new trial on this issue because the trial court's ruling excluding certain of this evidence constituted prejudicial error.

The State brought a motion in limine prior to trial to prohibit Johnson from introducing evidence of Petersen's character to support his theory of defense that Petersen lied about the offenses to have him arrested. Johnson resisted the State's motion and, via an offer of

proof in which he named his potential witnesses, proffered two categories of evidence in support of his theory of defense.

One category of evidence contended that during a previous marriage, Petersen fabricated a similar story to have her ex-husband arrested so that she could misappropriate certain of his property while he was in jail. Petersen apparently failed in the endeavor, however, and her ex-husband was released a few days after the arrest and was not charged in the incident.

Another category of evidence contended that after Petersen reported to the police that Johnson had physically assaulted her and he was in custody, Petersen approached several persons who were storing property for him and attempted to claim his property as her own. Johnson explained:

> We're in a situation where [Petersen] went up to people immediately after this and asked them please sign this [receipt] saying that I bought this from you. [Petersen] went and tried to get keys to [Johnson's] trailer, and finally the people said, no, we can't give you those, call the police. She talked to a police officer who was shaken and left because of the fact that she indicated that the police officer wouldn't let her have the keys. She made every effort to get her hands on all this property within hours—days, if not hours, after these events occurred. This is part and parcel of the same transaction.

Johnson argued that the evidence was probative of Petersen's knowledge and motive under § 904.04(2), STATS., and therefore admissible. The trial court disagreed, ruling that the evidence was impermissible character evidence under § 904.04(1) and that allowing it would convert the trial into one of property division.

Section 904.04(2), STATS., provides:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The general policy of § 904.04(2), STATS., is one of exclusion; the rule precludes proof of other crimes, acts or wrongs for purposes of showing that a person acted in conformity with a particular disposition on the occasion in question. *Id.; State v. Rutchik*, 116 Wis. 2d 61, 67-68, 341 N.W.2d 639, 642 (1984). The rule is not limited solely to a defendant's acts; it is applicable to any "person." *State v. Kimpel*, 153 Wis. 2d 697, 703-04, 451 N.W.2d 790, 793 (Ct. App. 1989). However, other acts evidence is admissible if its relevance hinges on something other than the forbidden character inference proscribed by § 904.04(2) *and* the proponent of the evidence uses it for that purpose. *See Rutchik*, 116 Wis. 2d at 67-68, 341 N.W.2d at 642-43.

In determining whether to admit other acts evidence, trial courts must apply a two-prong test. First, the court must determine whether the other acts evidence fits within one of the exceptions in § 904.04(2), STATS. *See State v. Fishnick*, 127 Wis. 2d 247, 254, 378 N.W.2d 272, 276 (1985). This requires that the evidence be probative of some proposition (such as proof of motive, opportunity, etc.) other than the proposition that because the person did prior act X, he or she is of

such a character and disposition to have committed present act Y.[1] *Id.* The court must then determine under § 904.03, STATS., whether any prejudice resulting from the admission of such evidence substantially outweighs its probative value. *Fishnick,* 127 Wis. 2d at 254, 378 N.W.2d at 276. A threshold question implicit within the two-prong analysis is whether the other acts evidence is relevant to an issue in the case. *Id.*

Here, the trial court stated only that the evidence constituted impermissible character evidence under § 904.04(1), STATS., and that its admission would convert the trial into one of property division. However, the evidence was proffered as other acts evidence under § 904.04(2) and the court did not specifically perform the balancing test required under this subsection. Thus, we may independently review the evidence to determine whether it supports the trial court's ruling to exclude it. *See State v. Shillcutt,* 116 Wis. 2d 227, 235-36, 341 N.W.2d 716, 719-20 (Ct. App. 1983), *aff'd,* 119 Wis. 2d 788, 350 N.W.2d 686 (1984).

---

[1] One commentator explains:

> [This] step requires that the trial court determine whether the proffered use of the evidence violates the propensity rule. The proponent must convince the judge that the other act evidence has relevance *apart from its tendency to shed light on the subject's character. One must remember that other act evidence will almost always be relevant to the subject's character and the inference that he acted in conformity therewith.* The real questions are whether it is also probative of some other proposition that is of consequence to the action and, if so, whether it is being used for that purpose.

Daniel D. Blinka, *Evidence of Character, Habit, and "Similar Acts" in Wisconsin Civil Litigation,* 73 MARQ. L. REV. 283, 304 n.66 (1989) (emphasis added).

■

We turn first to Johnson's proffered evidence concerning Petersen's attempt to obtain Johnson's property following her accusations and his resulting incarceration. As we have already explained, § 904.04(2), STATS., allows the admission of other acts if the relevance of the evidence hinges on something other than the forbidden character inference proscribed by § 904.04(2). The other act may have occurred after the particular offense at issue. *See, e.g., State v. Roberson*, 157 Wis. 2d 447, 459 N.W.2d 611 (Ct. App. 1990) (during the defendant's trial for concealing stolen property, the trial court properly admitted other acts evidence, as proof of intent, that four months after the offense at issue the defendant was found in possession of another stolen vehicle).

■

Here, Johnson's theory of defense was that Petersen falsely accused him of assault so that after he was incarcerated she could misappropriate certain items of his personal property. To bolster this theory, he sought to introduce evidence that within days after his arrest, Petersen approached several of the people who were storing property for Johnson and attempted to claim the property as her own. Johnson did not seek to introduce the evidence to establish Petersen's propensity to behave in a certain way; he offered it as probative of Petersen's motive for falsely accusing him of the assault. Motive has been defined as the reason which leads the mind to desire the result of an act. *Fishnick*, 127 Wis. 2d at 260, 378 N.W.2d at 279.

We conclude that the evidence was relevant to a proposition of consequence other than Petersen's character and any inference that she acted in conformity therewith. Unlike the other category of other acts evi-

dence involving Petersen's ex-husband, this evidence, viewed from the theory of defense, is directly linked to the criminal events charged against Johnson. The probative value of other acts evidence is partially dependent on its nearness in time, place and circumstance to the alleged act sought to be proved. *Id.* at 261, 378 N.W.2d at 280. The evidence involved the relationship between the principal actors (Johnson and Petersen), followed on the heels of Petersen's accusations against Johnson, and, most importantly, traveled directly to Johnson's theory as to why Petersen was falsely accusing him.[2]

If Johnson truly owned the disputed property and if Petersen truly attempted to gain possession of the property following her accusation against him and his resultant incarceration, the credibility of Johnson's theory of defense is obviously enhanced.[3] We conclude that the rejected evidence was highly probative to Johnson's theory of defense.

These same factors argue against the trial court's reason for excluding the evidence. The court rejected the evidence fearing that it tended to take the jury into a collateral dispute over who owned the disputed property. Section 904.03, STATS., permits the exclusion of relevant evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

---

[2] Given this linkage with the offenses charged against Johnson, we question whether this evidence even required an "other acts" analysis, a matter further pursued in our colleague's concurring opinion. Regardless, Johnson argues the issue in "other acts" terms and we answer it on that basis.

[3] We obviously do not pass on the credibility of this proffered evidence. Such is for the jury.

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We are not satisfied that any of these considerations substantially outweigh the probative value of the evidence.

Although other witnesses testified, this case essentially turned on the jury's assessment of the credibility issue drawn between Petersen and Johnson. Johnson's proffered evidence, *if believed*, offered a plausible scenario as to why Petersen might have falsely accused him. The jury's resolution of this credibility question might well have been influenced and assisted by this evidence. We observe that juries are many times required to address collateral events bearing upon the credibility of competing witnesses or their motives for testifying. And, the law provides instructions to assist in this task, including language which speaks to the possible bias or prejudice of a witness and the possible motives for falsifying. *See* WIS J I—CRIMINAL 300.

We also conclude that the prejudicial nature of the evidence against the State was outweighed by its probative value. Nearly all evidence operates to the prejudice of the party against whom it is offered. *See Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 61-62, 252 N.W.2d 81, 87 (1977). The test is whether the resulting prejudice of relevant evidence is *fair or unfair*. *See id.* at 61, 252 N.W.2d at 87; *see also* § 904.03, STATS. In most instances, as the probative value of relevant evidence increases, so will the *fairness* of its prejudicial effect. Thus, the standard for unfair prejudice *is* not whether the evidence harms the opposing party's case, but rather whether the evidence tends to influence the outcome of the case by "improper means." *Christensen*, 77 Wis. 2d at 61, 252 N.W.2d at 87. We fail to see how Johnson's proffered evidence

constitutes an improper means to influence the outcome.

We make a concluding observation on this issue. In the seminal "other acts" decision of *Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967), *cert. denied*, 390 U.S. 959 (1968), our supreme court cautioned that other acts evidence should be used sparingly, only when reasonably necessary, and that such evidence normally carried a calculated risk. *Id.* at 297, 149 N.W.2d at 565-66. We have examined the multitude of "other acts" Wisconsin cases, published and unpublished, since *Whitty*.[4] Except for an isolated few, these decisions have consistently approved the use of such evidence while mouthing *Whitty's* principles. Ironically, most of these rulings have come at the urging of the State, and many concerned "other acts" far more attenuated from the crime even than those presented here.

This trend is lamented and criticized by our colleague's concurring opinion, and others have voiced similar concerns.[5] Whether we agree with this trend or not, one thing is clear: *Whitty* is not the bastion it once was and it is time for the courts to say so. Unless or until our supreme court reverses the direction of the law in this area, we should stop writing appellate opinions which pretend to honor *Whitty* but actually offend it.

We conclude that the trial court's ruling denied Johnson the opportunity to put this highly relevant and fairly prejudicial evidence before the jury. The result, we conclude, was an unfair trial. We reverse the

---

[4] These number over one hundred.

[5] *See, e.g.,* the dissenting opinion in *State v. Clark*, 179 Wis. 2d 484, 497-500, 507 N.W.2d 172, 177-78 (Ct. App. 1993).

trial court's ruling excluding this aspect of Johnson's other acts evidence. We remand for a new trial.

Our ruling changes the factual backdrop against which the trial court made its further ruling regarding the other category of other acts evidence concerning Petersen's ex-husband. On remand, we direct the court to redecide this question in light of our holding. In so directing, we are not suggesting that the court's present ruling is necessarily wrong.

## II. PRO SE REPRESENTATION[6]

Johnson next argues that the trial court failed to honor his constitutional right to represent himself. This issue surfaced on the second day of trial before the jury was sworn, when Johnson's trial counsel requested the court to allow Johnson to cross-examine Petersen personally. Johnson's counsel stated that if the request was denied, Johnson would be "in a position" to assert his right to represent himself with standby counsel present. On appeal, Johnson attempts to broaden this statement regarding his counsel's possible standby role into a claim that counsel was also requesting the court to allow him to withdraw and to allow Johnson to proceed pro se. At the postconviction motion hearing, the trial court concluded that Johnson had sought only to cross-examine Petersen and that no motion by Johnson to represent himself had been made.

An accused has a constitutional right to self-representation. *Faretta v. California*, 422 U.S. 806, 836

---

[6] Because of our holding on the other acts issue resulting in a new trial, we are not required to address this issue. Nonetheless, we choose to do so.

342

(1975); *Pickens v. State*, 96 Wis. 2d 549, 555-56, 292 N.W.2d 601, 605 (1980). However, before allowing an accused the right to self-representation, the trial court must first determine that the accused has intentionally relinquished his or her concurrent constitutional right to counsel. *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938); *Pickens*, 96 Wis. 2d at 561, 292 N.W.2d at 608. This determination rests upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. *Johnson*, 304 U.S. at 464; *Pickens*, 96 Wis. 2d at 561, 292 N.W.2d at 608. Whether Johnson was denied his constitutional right to self-representation raises an issue of constitutional fact which we review independently. *State v. Haste*, 175 Wis. 2d 1, 23, 500 N.W.2d 678, 687 (Ct. App. 1993).

We agree with the trial court that the record does not support Johnson's contention that the court failed to honor his right to self-representation. We quote at length from the colloquy between Johnson's counsel and the court at trial from which this issue was born.

> [COUNSEL]: . . . I would add that if the Court puts us in a position—I just discussed this with him and he's aware of the problem. *If he puts us in a position at this point as having me as standby counsel and him handling the case, since the complexity of the case has been greatly reduced, we're really now to the point where it is the state's witnesses versus his testimony, since everything else, if I may be blunt, been gutten* [sic], *I don't see a problem with that.* [Emphasis added.]
> THE COURT: Okay. The court definitely sees a problem with it. You were appointed as counsel. We're on the second morning of trial. You will represent [Johnson]. I will not grant any motion to withdraw on your part, . . . no matter what.

[COUNSEL]: It's not a motion to withdraw with respect to delay.

THE COURT: Mr. Johnson will not be permitted to ask the complaining witness any questions in this matter. That's what counsel is for. We just aren't going to have that. We are not going to have any team law practice in this court.

Here, rather than asserting his right to self-representation, *Johnson argued only that he would be in a position to assert this right if he failed to prevail on his cross-examination request.* Though he attempts to broaden this statement to encompass his claim that his constitutional right to self-representation was violated, Johnson's motion to the court, and the court's interpretation of his argument, went only to the cross-examination aspects of this issue. Despite his statement that he would assert his right if the court denied his cross-examination request, Johnson was apparently satisfied with the scope of the court's ruling because his counsel did not ask to withdraw and Johnson did not ask the court to discharge him. Nor did counsel ask the court to conduct a hearing or to engage Johnson in a colloquy to ensure that his decision to represent himself was made knowingly, voluntarily and intelligently. *See Faretta*, 422 U.S. at 835. Later in the trial, when the court reaffirmed its ruling and cited case law to support its holding that a defendant has no constitutional right to participate as co-counsel, Johnson neither questioned the court's ruling nor asked to represent himself.

On appeal, issues raised but not briefed or argued are deemed abandoned. *Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981). Akin to this rule, for purposes

of trial court proceedings, is the principle that a party must raise and argue an issue with enough prominence to signal to the trial court that it is being called upon to address an issue and make a ruling. *See State v. Salter*, 118 Wis. 2d 67, 78-79, 346 N.W.2d 318, 324 (Ct. App. 1984). In this case, while Johnson's cross-examination request raised the specter of asserting his self-representation right, he tacitly abandoned it by arguing only for permission to allow him to cross-examine Petersen and by failing to assert this right following the trial court's denial of his request.

## III. SUFFICIENCY OF THE EVIDENCE[7]

Johnson next argues that the evidence adduced at trial was insufficient to support his conviction for second-degree reckless endangerment.[8] The jury found him guilty of second-degree reckless endangerment, but not guilty of reckless endangerment while threatening to use a dangerous weapon. *See* § 939.63, STATS. (providing a penalty enhancement for committing certain crimes while possessing, using or threatening to use a dangerous weapon).

Johnson begins by arguing that for the jury to find him guilty of second-degree reckless endangerment, it had to believe the testimony of Petersen. Since the jury acquitted him of using a dangerous weapon to commit the crime, however, he contends that the jury must have disbelieved Petersen's testimony that he held a knife to her throat. He concludes that his conviction for

---

[7] Even though we have ordered a new trial on other grounds, double jeopardy considerations require that we address Johnson's sufficiency of evidence claim. *Burks v. United States*, 437 U.S. 1, 17-18 (1978).

[8] Johnson does not contest the sufficiency of the evidence regarding the battery conviction.

second-degree reckless endangerment must fail because no additional evidence other than his threatening Petersen with a knife supports the jury's finding that his conduct created an unreasonable and substantial risk of death or great bodily harm.

On reviewing the sufficiency of the evidence to support a conviction, we may not reverse a conviction unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact acting reasonably could have found guilt beyond a reasonable doubt. *State v. Fettig*, 172 Wis. 2d 428, 447, 493 N.W.2d 254, 262 (Ct. App. 1992). The same standard holds true whether the evidence is circumstantial or direct. *Id.* We also will not invade the jury's function to determine where the truth lies and the credibility of the witnesses based upon their testimony at trial. *State v. Hines*, 173 Wis. 2d 850, 861, 496 N.W.2d 720, 724 (Ct. App. 1993).

To convict Johnson under § 941.30(2), STATS., the State had to prove that: (1) Johnson endangered the safety of another human being, and (2) he did so by criminally reckless conduct. WIS J I—CRIMINAL 1347. This requires that Johnson's conduct created an unreasonable and substantial risk of death or great bodily harm to another and that Johnson was aware that his conduct created such a risk. *Id.*

Johnson highlights only the benign evidence to bolster his claim that no evidence other than Petersen's testimony regarding the knife exists to sustain his conviction. He focuses upon Petersen's testimony that her injuries were minimal and required no medical attention, testimony by a police officer that Petersen initially had a red mark on her cheek after the incident

but that it disappeared within fifteen to twenty minutes, and the fact that Petersen was a healthy forty-two-year-old adult female.

However, we are to view the evidence in the light most favorable to the State and the conviction. *See Fettig*, 172 Wis. 2d at 447, 493 N.W.2d at 262. Here, to sustain a conviction for second-degree reckless endangerment, the evidence needed only to establish that Johnson's conduct created an unreasonable and substantial risk of death or serious bodily harm—not that Petersen actually sustained serious harm. In addition to holding a knife to her throat, Petersen testified that Johnson grabbed her by her clothes and threw her over a waist-high dresser into a corner, causing a large scrape on her back. Petersen testified that, after she stood and tried to move out of the corner, Johnson then grabbed her by the face and beat her against the wall three to five times. She also testified that Johnson "put his hands around [her] neck and started to strangle [her] until [she] couldn't breathe."

We do not sit as a jury to determine guilt. Rather, we consider whether the jury could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. *State v. Martinez*, 150 Wis. 2d 47, 58, 441 N.W.2d 690, 694 (1989). Our examination of the record convinces us that sufficient evidence was presented to sustain the jury's guilty verdict.

Within his argument, Johnson also argues that the absence of sufficient evidence other than Petersen's testimony regarding the knife renders the verdicts inconsistent and entitles him to a new trial. However, inconsistency in verdicts is not per se grounds for

reversal. *See, e.g., United States v. Powell*, 469 U.S. 57, 68-69 (1984); *Martinez*, 150 Wis. 2d at 56 n.4, 441 N.W.2d at 693; *Nabbefeld v. State*, 83 Wis. 2d 515, 529-30, 266 N.W.2d 292, 299 (1978). Regardless, given our conclusion that there was sufficient evidence to support the jury's verdict, we will not and need not speculate as to the reasons why the jury found Johnson guilty of second-degree reckless endangerment but determined that he had not committed the crime while using a dangerous weapon. *Martinez*, 150 Wis. 2d at 56 n.4, 441 N.W.2d at 693.

## CONCLUSION

Although we have upheld certain of the trial court's rulings and we have found the evidence sufficient, our reversal of the trial court's evidentiary ruling requires that we reverse the judgment of conviction and the postconviction order denying Johnson a new trial. We remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

ANDERSON, P.J. (*concurring*). I write separately because the issue of whether or not Donald Johnson could present evidence of Karen Petersen's activities immediately after his arrest raises several concerns.

Before discussing those concerns there is a significant problem Johnson does not address in his argument before this court: Should the proffered evidence be classified as "other acts" evidence subject to § 904.04(2), STATS.? I am satisfied that Petersen's conduct is not classic "other acts" evidence. Rather, it is admissible evidence supporting Johnson's theory of

defense. It is part of the panorama of evidence that directly bolsters Johnson's defense. Section 904.04(2) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This statute is used in two classic situations. In these situations the evidence of "other acts" is of conduct that happened at another time and place. For example, in a prosecution for C.V.C.'s sexual assault of his wife, evidence that two years earlier C.V.C. had threatened the life of his wife was admitted. *See State v. C.V.C.,* 153 Wis. 2d 145, 160-62, 450 N.W.2d 463, 469-70 (Ct. App. 1989). And, in a prosecution for being party to the crime of first degree murder, the defendant was prevented from presenting evidence that several years earlier a third party had previously shot another person in an attempt to prove that the third party had shot the victim. *See State v. Balistreri,* 106 Wis. 2d 741, 754-57, 317 N.W.2d 493, 499-501 (1982).

In this case the evidence Johnson sought to introduce was of Petersen's conduct immediately after the assault.[1] Johnson's purpose in using this evidence was

---

[1] There is another category of evidence Johnson sought to introduce dealing with Petersen's conduct during her previous marriage. According to Johnson's offer of proof, this evidence would have shown that Peterson fabricated a story about being assaulted by her then-husband and after he was arrested she tried, but failed, to gain possession of his property. Because this

not to prove that at the time of the assault Petersen was acting in conformity with her prior conduct or to prove one of the exceptions to the general rule of exclusion of § 904.04(2), STATS. Johnson wanted to use the evidence defensively; he sought to prove that Petersen had fabricated the assault in an attempt to gain possession of his personal property.

Johnson's theory of defense was that Petersen fabricated the assault because she was an excessively jealous and vengeful person. Johnson testified that when he announced that he was moving out of their shared apartment, Petersen vented her rage by assaulting him. He admitted he did have physical contact with Petersen when he defended himself. His offer of proof was, that after his arrest, Petersen undertook brash attempts to strip him of his property. Johnson's testimony and offer of proof presented the court with a depiction of Petersen as a spiteful person who, without delay, approached more than six persons storing Johnson's property in an attempt to gain possession of that property, solicited a police officer to give her Johnson's keys to his trailer and beseeched the district attorney's office to give her possession of a television set.

For Johnson's theory of defense to have any viability, Petersen's conduct cannot be viewed frame-by-frame as the State argues. The fact that Petersen's bid to secure Johnson's personal property came after the alleged assault does not make it an "other act" subject to analysis under § 904.04(2), STATS. A criminal act cannot be viewed frame-by-frame if the finder of fact is to arrive at the truth.

For example, in a case where a defendant is charged with shooting her husband, the defendant's

conduct occurred at another time and place it definitely is classic "other acts" evidence.

act of purchasing a weapon three days before the shooting as well as her act of disposing of the weapon three days after the shooting would be admissible. No reasonable defense attorney would raise an objection that the acquisition and disposition of the weapon are inadmissible as "other acts." The same is true in this case, just because it is the alleged victim's conduct that is sought to be put before the jury does not make that conduct "other acts."

I cannot help but think, that if Johnson's assault had resulted in Petersen's hospitalization and, prior to his arrest, Johnson attempted to gain possession of Petersen's personal property that, in its case-in-chief, the State would have presented such evidence with both barrels blazing along with the argument that Johnson's attempts to get the property were not "other acts." And, if a reasonable defense attorney had raised an objection under § 904.04(2), STATS., the State would have reloaded and argued that if the evidence was "other acts" evidence, it was an exception proving intent, motive, plan, *etc.*

Apart from my determination that the evidence of Petersen's conduct is not evidence of "other acts," I have several concerns about the application of § 904.04(2), STATS., when a defendant seeks to use evidence of a victim's, witness's or third party's "other acts" defensively.

My first concern relates to the gutting of the rule excluding "other acts." For the last several years the State has argued in numerous appeals that evidence of "other acts" offered by the prosecution during trial was correctly admitted as an exception to the general prohibition of § 904.04(2), STATS. The State's success can be seen in the annotations found in WIS. STAT. ANN. § 904.04 (West 1993), which are overflowing with

351

reported cases of exceptions. As one commentator has written, "[t]he various exceptions to the character rule used by the courts cause the rule to operate as a barrier to admissibility to approximately the same extent that wire mesh operates as a barrier to the flow of water." IA JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, § 54.1, at 1154 n.1 (Tillers rev. ed., 1983).

The State's efforts, at this late date, to replace the proverbial screen door on a submarine with a water tight hatch to prevent an accused from using "other acts" evidence defensively is contrary to my sense of justice.

My second concern focuses on the strict application of the two-prong balancing test of admissibility for "other acts" evidence offered by the defendant. *See State v. Fishnick,* 127 Wis. 2d 247, 254, 378 N.W.2d 272, 276 (1985). Specifically, I see no practical reason for the second prong of the test—the determination of whether the offered evidence's potential prejudicial effect outweighs its probative value—when analyzing "other acts" evidence offered defensively.

In *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967), *cert. denied,* 390 U.S. 959 (1968), the Wisconsin Supreme Court noted that one of the reasons for excluding "other acts" evidence is "the overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts." *Id.* at 292, 149 N.W.2d at 563. The heavy burden the State bears in its attempt to convict would be substantially lightened if it could introduce "other acts" evidence for the sole purpose of establishing a defendant's unsavory character and raise the inference that the defendant has a propensity for criminal behavior. The "other acts" evidence could be so inflammatory that a jury would

find a defendant guilty solely because he or she committed prior acts of misconduct.

I do not see these concerns of prejudice being present when a defendant seeks to introduce "other acts" evidence. The defendant does not have the burden of proving his or her innocence at trial. A defendant uses evidence of a witness's or victim's "other acts" of misconduct merely to raise a reasonable doubt about the defendant's guilt. The dangers of "other acts" evidence described in *Whitty*, 34 Wis. 2d at 292, 149 N.W.2d at 563, are not present when a defendant uses such evidence.

Several cases reach this same conclusion. In *United States v. Aboumoussallem*, 726 F.2d 906 (2nd Cir. 1984), the Second Circuit held that the "risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense." *Id.* at 911. The Second Circuit concluded that "[i]n such cases the only issue . . . is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense." *Id.* at 912. The Eleventh Circuit has reached a similar conclusion in *United States v. Cohen*, 888 F.2d 770, 777 (11th Cir. 1989).

My third concern is of constitutional dimensions. I believe that there are serious constitutional implications to a rule that prohibits a defendant from introducing evidence of "other acts" where such evidence is relevant to his or her defense. It is an elementary constitutional principle that an accused must be given a meaningful opportunity to present a complete defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). In numerous cases a state's interest in various evidentiary and procedural rules has had to give way to the accused's right to present a complete

defense. *See, e.g., Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (state's general concern with potential "prejudice" to victim from evidence regarding her interracial relationship could not justify the exclusion of evidence "with such strong potential" to aid the defense); *United States v. Nixon*, 418 U.S. 683, 713 (1974) (executive privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial"); *Davis v. Alaska*, 415 U.S. 308, 319 (1974) (accused's interest in presenting defense outweighs state policy of protecting juvenile offender from potential embarrassment); *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973) (accused's interest in presenting defense outweighs state's interest in maintaining its hearsay rule).

There is no right more fundamental than the right of an accused to present witnesses in his or her own defense. The fundamental nature of this right requires that the state's interest in the rule excluding "other acts" evidence and its balancing test must give way to an accused's right to present exculpatory evidence. *See Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)).