COURT OF APPEALS
DECISION
DATED AND FILED

February 29, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP1352-CR**

Cir. Ct. No.  **2021CF64**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

NATHAN THOMAS VEESENMEYER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Grant County: LYNN M. RIDER, Judge. *Reversed and cause remanded with directions*.

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Nathan Thomas Veesenmeyer appeals a judgment of conviction for theft as a party to a crime.  Veesenmeyer argues that the evidence presented at his jury trial was insufficient to support his conviction.  We agree and, therefore, reverse and remand to the circuit court to vacate the judgment of conviction and dismiss the case.[1]

## BACKGROUND

¶2    On November 2, 2020, a dealership in Grant County brought a utility task vehicle (UTV) to a nearby service center to repair the air conditioning unit.  Between 4:00 p.m. and 5:00 p.m. on November 3, 2020, a mechanic at the service center parked the UTV outside the service center with the keys in it and left a voicemail for the dealership saying that the UTV repair was complete.  On November 4, 2020, the mechanic returned to the service center at 7:30 a.m. and did not see the UTV.  The manager of the service center informed the dealership that the UTV had been taken, and the dealership called law enforcement.

¶3    The State charged Veesenmeyer with theft of the UTV as a party to a crime.  The case proceeded to a jury trial on August 29 and 30, 2022.  The jury found Veesenmeyer guilty as charged.  The circuit court sentenced Veesenmeyer to five years of initial confinement and five years of extended supervision.

---

[1] Veesenmeyer requests that we remand for a new trial.  The State does not respond to Veesenmeyer's request for relief.  However, "double jeopardy principles prevent a defendant from being retried when a court overturns [the defendant's] conviction due to insufficient evidence ….  Where the evidence is found insufficient to convict the defendant at trial, the defendant cannot again be prosecuted." *State v. Henning*, 2004 WI 89, ¶22, 273 Wis. 2d 352, 681 N.W.2d 871 (citing *Burks v. United States*, 437 U.S. 1, 11 (1978)); *see also State v. Ivy*, 119 Wis. 2d 591, 608-09, 350 N.W.2d 62 (1984) (explaining that when an appellate court determines that the evidence was insufficient to support a conviction the remedy is to order a judgment of acquittal, citing *Burks*, 437 U.S. at 18).

¶4 Veesenmeyer appeals.

## DISCUSSION

¶5 In reviewing the sufficiency of the evidence to support a conviction, we may not substitute our judgment for that of the jury "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶6 The parties agree that the State's case comprised solely circumstantial evidence. The jury was instructed that, "Circumstantial evidence is evidence from which a jury may logically find other facts according to common knowledge and experience. Circumstantial evidence is not necessarily better or worse than direct evidence. Either type of evidence can prove a fact."

¶7 The sufficiency of the evidence test is the same regardless of whether the evidence is direct or circumstantial. *Id.* at 501. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it. *Id.* at 507; *see State v. Toliver*, 104 Wis. 2d 289, 293-94, 311 N.W.2d 591 (1981) ("[T]he jury verdict must be upheld" where there "was sufficient evidence and reasonable inferences which could be drawn therefrom to justify a rational jury in finding the defendant guilty beyond a reasonable doubt on all the elements of [a] crime."). "If more than one reasonable inference can be drawn from the evidence," we will "adopt the inference that supports the verdict." *State v. Mertes*, 2008 WI App 179, ¶10, 315 Wis. 2d 756,

762 N.W.2d 813. We consider the totality of the evidence when conducting a sufficiency of the evidence review. *State v. Smith*, 2012 WI 91, ¶36, 342 Wis. 2d 710, 817 N.W.2d 410 (A jury is not required to "ignore the larger picture so as to focus on each piece in a vacuum and ask whether that piece standing alone supports a finding of guilt.").

¶8      Whether the evidence is sufficient to support a conviction beyond a reasonable doubt is a question of law that we review de novo. *State v. Booker*, 2006 WI 79, ¶12, 292 Wis. 2d 43, 717 N.W.2d 676.

¶9      Before the jury could find Veesenmeyer guilty, the State was required to prove beyond a reasonable doubt that Veesenmeyer committed theft as a party to a crime, in violation of WIS. STAT. § 943.20(1)(a) (2021-22).[2]   The instruction presented to the jury defines the elements of "theft" as:

> 1.  The defendant intentionally took and carried away movable property of another ….
>
> 2.  The owner of the property did not consent to taking and carrying away the property.
>
> 3.  The defendant knew that the owner did not consent.
>
> 4.  The defendant intended to deprive the owner permanently of the possession of the property.

WIS JI—CRIMINAL 1441 (citing § 943.20(1)(a)).

¶10     WISCONSIN STAT. § 939.05 provides that whoever is concerned in the commission of a crime is a party to that crime and may be convicted of that

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

crime although that person did not directly commit it. Sec. 939.05. The jury was instructed that:

> A person intentionally aids and abets the commission of a crime when, acting with knowledge or belief that another person is committing or intends to commit a crime, knowingly either assists the person who commits the crime; or is ready and willing to assist and the person who commits the crime knows of the willingness to assist.
>
> To intentionally aid and abet theft, the Defendant must know that another person is committing or intends to commit the crime of theft and have the purpose to assist the commission of that crime.

A person intentionally aids and abets the commission of a crime by (1) engaging in "some conduct (either verbal or overt), which as a matter of objective fact aids another person in the execution of a crime," and (2) by having a "conscious desire or intent 'that the conduct will in fact yield such assistance.'" *State v. Martinez*, 150 Wis. 2d 47, 52, 441 N.W.2d 690 (1989) (quoted source omitted).

¶11   To sustain Veesenmeyer's conviction, the record must contain evidence, viewed in the light most favorable to the State, that would allow a reasonable jury to conclude beyond a reasonable doubt that Veesenmeyer directly committed or intentionally aided and abetted the UTV theft. *See Poellinger*, 153 Wis. 2d at 507.

¶12   The State presented the following pertinent evidence.

¶13   The Grant County deputy sheriff who responded to the report of a stolen UTV testified that she received video from November 3, 2020, from the UTV dealership's surveillance cameras and still photos taken from the video. The State played portions of the video to the jury. The video showed a truck with a trailer hitched to it driving through the dealership's parking lot around 8:47 p.m.

and driving near the service center around 10:47 p.m. From the photos, the deputy deciphered the license plate number of the trailer and ran a vehicle registration query which identified the trailer as being registered to Brittany McKinnon. The deputy searched McKinnon on Facebook and "found a picture with a man and in the comments of that picture, she stated that his name was Nathan and it was her boyfriend."

¶14 A sergeant with the Grant County Sheriff's office testified that he received surveillance videos from November 3, 2020, from a business near the dealership and service center. The State played portions of the videos to the jury. The videos showed a truck with a trailer hitched to it pull into the service center parking lot, the truck's driver's side door open, and a person whose gender and identity could not be ascertained from the low quality footage, walk from the truck's driver's side door away from the truck. The videos showed the UTV being driven in front of the truck and around to the back of the truck where the back of the trailer would be. The videos showed the truck and trailer then leave the parking lot and drive towards the on-ramp to Highway 151 towards Dubuque.

¶15 An Iowa State Patrol trooper testified as follows. On November 10, 2020, the trooper responded to an accident involving a truck pulling a trailer that occurred in northeast Iowa. "The trailer was on its side … jackknifed" and sustained damage to its side, and the truck also sustained damage to the rear driver's side. The trooper identified McKinnon as the driver of the truck using her Minnesota Tribal ID card, identified the trailer as being registered to McKinnon based on the trailer's license plate number, and identified the truck as a rental. McKinnon was with a male passenger whom the trooper did not identify at the time. The passenger used a grinder to cut the safety chains to restore the trailer to an upright position. On November 24, 2020, the trooper "went through

Ms. McKinnon's public Facebook page," found a picture of a man holding two children, and identified that man as the person who had been McKinnon's passenger.

¶16 An officer with the City of Saint Paul, Minnesota testified as follows. On November 24, 2020, the officer was dispatched to an address where the truck and trailer might be located. While driving to the address, the officer saw in the oncoming traffic lane the truck and trailer matching the description she was given. The officer followed the truck and trailer which made several turns before suddenly pulling over and parking. The officer drove past the truck and trailer and pulled over "probably about two to three houses up" the street. The officer observed the truck and trailer in her rearview mirror, saw "what appeared to be a gentlemen [get] out of the vehicle," and then "lost sight of the gentleman." The officer seized the truck and trailer, towed them to an impound lot, and placed them on hold for Grant County.

¶17 The sergeant with the Grant County Sheriff's Office who had reviewed some of the videos of the service center parking lot continued to testify as follows. After the truck and trailer were impounded, the sergeant received a voicemail from "a male voice saying that this call was in regard to a trailer that was in the Saint Paul Police Department impound yard" from a phone number ending in 4795. The sergeant received another call from the same number from an individual who "sounded like the very same male" who had called previously and was again inquiring about the impounded trailer. The sergeant did not return either call. On December 2, 2020, the sergeant received another voicemail from the same number from a female who identified herself as McKinnon and inquired about the impounded truck and trailer and "wanting to know what they needed to do to get it." The sergeant requested records from the cell phone service provider

for the number ending in 4795. The records identified McKinnon as the accountholder for both that number and a second number associated with it, ending in 6564.

¶18 On December 4, 2020, the sergeant went to St. Paul and searched the truck and trailer pursuant to a search warrant. The sergeant found hand tools and power tools, clothing, and W2G slips with the name Nathan Veesenmeyer on them in the truck, as well as tools, a pallet jack, a floor jack, and a Bobcat Toolcat UTV in the trailer. The sergeant learned that the Bobcat Toolcat UTV had been reported stolen from a dealership in Albert Lea, Minnesota. The sergeant also obtained a copy of the rental agreement for the truck which showed that the truck had been rented on October 26, 2020, by Denise Veesenmeyer, whom the sergeant found out was the mother of Nathan Veesenmeyer.

¶19 The sergeant collected samples to test for DNA on the truck's driver's side and passenger's side front interior door handles. The sergeant also collected DNA from McKinnon and Veesenmeyer and submitted all samples to the Wisconsin State Crime Lab. A DNA analyst at the Wisconsin State Crime Lab testified that there was "strong support for inclusion" of both McKinnon's and Veesenmeyer's DNA on both the truck's driver's side and passenger's side interior door handles. An unknown individual's DNA was also found on the passenger's side interior door handles.

¶20 An employee from the Mid-States Organized Crime Information Center testified as follows. The employee used the records from the two cell phone numbers ending in 4795 and 6564 to generate maps of the locations of the cell phones, and the maps were shown to the jury. One map showed the location data for the number ending in 4795 on November 3, 2020, near the following

locations at the following times: Minneapolis, Minnesota at 4:56 a.m., Black River Falls at 12:23 p.m., Madison at 6:12 p.m., Dodgeville at 6:25 p.m., and Dyersville, Iowa at 11:52 p.m. The second map showed the location data for the number ending in 6564 which followed a similar route as the number ending in 4795.

¶21     To summarize, the State submitted the following evidence in support of Veesenmeyer's guilt: (1) a man named Nathan was McKinnon's boyfriend; (2) the truck used for the UTV theft on November 3, 2020, was rented by Veesenmeyer's mother on October 26, 2020, and the trailer used in that theft was owned by McKinnon; (3) two cell phones under McKinnon's account were present near the relevant areas at the relevant times with respect to the UTV theft on November 3, 2020; (4) a man depicted on McKinnon's Facebook page was with McKinnon on November 10, 2020, when the truck and trailer were in an accident in Iowa; (5) a man walked away from the driver's side of the truck and trailer after parking the truck and trailer in Minnesota on November 24, 2020; (6) DNA with a "strong" likelihood of being Veesenmeyer's DNA was found on the truck's interior driver's side and passenger's side door handles; (7) the truck contained W2G slips with the name Nathan Veesenmeyer on them; (8) the trailer contained tools and equipment that could have been used in the theft of the UTV; and (9) a man inquired twice about retrieving the truck and trailer from the Saint

Paul impound lot.[3]  We consider this evidence in the light "most favorabl[e] to the [S]tate and the conviction."  *Id.* at 507.

¶22    From the sergeant's testimony that he took DNA samples from Veesenmeyer, a jury could reasonably infer beyond a reasonable doubt that he took those samples from the person in custody who was the defendant sitting in the courtroom.  Thus, the jury could also reasonably infer that it was the DNA of the defendant sitting in the courtroom that was found in the truck.  The jury could also infer from the sergeant's testimony that Veesenmeyer's mother rented the truck pulling the trailer owned by McKinnon that the renter was the mother of the defendant sitting in the courtroom.  The jury could similarly infer from the sergeant's testimony that he found in the truck W2G forms with Nathan's Veesenmeyer's name on them that the sergeant was referring to the defendant sitting in the courtroom.  These inferences could, in turn, connect the defendant sitting in the courtroom with both the truck and with McKinnon.

¶23    More specifically, given the totality of the evidence summarized above, a jury could reasonably infer beyond a reasonable doubt that Veesenmeyer was associated with McKinnon, had been driving with McKinnon in a truck rented by his mother that was used in the theft of the UTV, used some of the tools in the truck to turn upright McKinnon's trailer in Iowa after it had jackknifed about one week after the theft, and called about the truck and trailer after it had been impounded.

---

[3] We observe that none of the witnesses who testified at the trial identified the defendant sitting in the courtroom as the person they saw in the surveillance videos; as the man they saw on McKinnon's Facebook page, as McKinnon's male passenger in Iowa, or as the man who walked away in Minnesota; or as having a voice like the man who called the sergeant after the truck and trailer were impounded.

¶24 However, it would be speculative to draw from these inferences that Veesenmeyer assisted in the theft of the UTV that had been left in the service center parking lot the night of November 3, 2020. That is, none of the circumstantial evidence bridges the divide between the above inferences and the inference that Veesenmeyer participated in the UTV theft or engaged in conduct that aided or abetted in the UTV theft. "A jury may draw reasonable inferences from facts established by circumstantial evidence, but it may not indulge in inferences wholly unsupported by any evidence." *State ex rel. Kanieski v. Gagnon*, 54 Wis. 2d 108, 117, 194 N.W.2d 808 (1972). Mere speculation is insufficient to support a conviction. *See id.* ("[T]he defendant cannot be convicted on mere suspicion or conjecture.").

¶25 In sum, we conclude that the evidence was so lacking in probative value and force that no jury, acting reasonably, could have found Veesenmeyer guilty beyond a reasonable doubt of theft as a party to a crime.

## CONCLUSION

¶26 For the reasons stated, we conclude that the evidence was insufficient to convict Veesenmeyer of theft as a party to a crime. Accordingly, we reverse and remand to the circuit court to vacate the judgment of conviction and dismiss the case.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11